AKBAR–EL, Appellant, et al.,

v.

MUHAMMED et al., Appellees.

[Cite as *Akbar-el v. Muhammed* (1995), 105 Ohio App.3d 81.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 94 CA 2059.

Decided June 28, 1995.

*Ali A. Akbar-el*, pro se.

*Todd R. Marti*, Assistant Attorney General, for appellees.

PETER B. ABELE, Presiding Judge.

This is an appeal from a summary judgment entered by the Ross County Common Pleas Court in favor of Wali Muhammed, David Schwartz, Jeff Matthews, Michael Leonard, Lawrence Freeman, Terry Morris, defendants below and appellees herein, and against Ali A. Akbar-el, plaintiff below and appellant herein, and six other prisoners at the Chillicothe Correctional Institution who belong to the Moorish Science sect of Islam.[1]

Appellant assigns the following error:

"The trial court erred to the prejudice of the plaintiff/appellant in granting summary judgment to the defendants in violation of R.C. 2921.45, Article 6, Sec. 2, of the U.S. Constitution, Article I, Sec. 16, of the Ohio Constitution, the Religious Freedom Restoration Act of 1993, and the Equal Protection Clause of the 14th Amendment to the U.S. Constitution, by not viewing the claims of plaintiff/appellant according to evidence submitted concerning a direct violation of the Establishment and Free Exercise Clauses of the 1st Amendment to the U.S. Constitution."

A review of the record reveals the following facts pertinent to this appeal. Appellant and his co-plaintiffs, all inmates at the Chillicothe Correctional Institute, belong to the Moorish Science sect of Islam. In 1993, appellant and his co-

---

1. We note that none of the other plaintiffs filed a notice of appeal in this appeal.

plaintiffs filed suit in the Ross County Common Pleas Court asserting claims under Ohio law and alleging violations of their free exercise rights under the First Amendment to the United States Constitution. In the complaint, they sought to force prison officials to permit them to conduct religious services separate from those conducted for inmates who belong to other Islamic sects. The plaintiffs also sought the right to wear a "fez" rather than the officially sanctioned "tarbush" on their heads.

Appellees filed a motion to dismiss on April 29, 1993. On January 24, 1994, the trial court dismissed the state law claims and ordered the case to proceed on the federal claims. The trial court also established a discovery and motion schedule for the federal claims and granted appellees leave to file an answer to appellant's complaint.

Thereafter, the parties exchanged a flurry of pretrial motions and discovery. On July 20, 1994, appellees filed a motion for summary judgment. Appellant and his co-plaintiffs filed a variety of nonresponsive pleadings, including motions for Civ.R. 37 sanctions, Civ.R. 50 judgment, and a request that the trial court take " 'mandatory judicial notice' pursuant to Evid.R. 201(D) and (G)." [2] On August 30, 1994, the trial court granted appellees' motion for summary judgment and dismissed the action.

Appellant filed a timely notice of appeal.

Although appellant's arguments are difficult to decipher, we afford leniency to *pro se* prisoner litigants. *State ex rel. Karmasu v. Tate* (1992), 83 Ohio App.3d 199, 206, 614 N.E.2d 827, 832; *In re Paxton* (July 1, 1993), Scioto App. No. 91–CA2008, unreported. Thus, we will attempt to discern whether appellant's arguments have merit and will review the record to determine whether there was any manifest error that reasonably can be said to have been raised by appellant.

In his sole assignment of error, appellant asserts the trial court erred by granting appellees' motion for summary judgment. We note that summary judgment is appropriate when the movant demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a

---

2. Although he does not specifically assign it as error, appellant complains that the trial court failed to rule on various outstanding motions prior to its entry of summary judgment. When a trial court fails to rule upon a motion, an appellate court generally will presume the trial court overruled the motion. See *Newman v. Al Castrucci Ford Sales, Inc.* (1988), 54 Ohio App.3d 166, 561 N.E.2d 1001; *Kane v. Ford Motor Co.* (1984), 17 Ohio App.3d 111, 17 OBR 173, 477 N.E.2d 662; *Solon v. Solon Baptist Temple, Inc.* (1982), 8 Ohio App.3d 347, 8 OBR 458, 457 N.E.2d 858; *Francis v. Francis* (Aug. 8, 1990), Lawrence App. No. 1925, unreported, 1990 WL 119250.

matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, said party being entitled to have the evidence construed most strongly in his favor. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 339–340, 617 N.E.2d 1123, 1126; *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 884; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. The moving party bears the burden of proving that no genuine issue of material fact exists. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801.

■ When reviewing a summary judgment, an appellate court must independently review the record to determine if summary judgment was appropriate. An appellate court need not defer to the trial court's decision in summary judgment cases. See *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 599 N.E.2d 786.

Both the United States Supreme Court and Congress have addressed the standard to be applied in freedom of religion cases. In *Sherbert v. Verner* (1963), 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965, and *Wisconsin v. Yoder* (1972), 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15, the court set forth the compelling interest test. When employing the test, a court must determine whether a compelling state interest justifies the infringement of the First Amendment right to free exercise of religion. In *Sherbert,* the court determined that no compelling state interest justified a state statute which denied unemployment benefits to an individual who was unable to work on Saturdays due to religious reasons. In *Yoder,* the court determined that no compelling state interest justified a state statute which required Amish children to attend school beyond the eighth grade contrary to their religious beliefs.

The United States Supreme Court has historically permitted greater restrictions on the free exercise of religion in prison contexts. In *Pell v. Procunier* (1974), 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495, 501, the court wrote:

"Prison inmates retain those First Amendment rights that are not inconsistent with their status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the correction system, to whose custody and care the prisoner has been committed in accordance with due process of law." See, also, *Wolff v. McDonnell* (1974), 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935.

In *Procunier v. Martinez* (1974), 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224, 235–236, the court noted the importance of deference to state prison authorities who must maintain security within their institutions:

"Courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. Judicial recognition of that fact reflects no more than a healthy sense of realism. Moreover, where state penal institutions are involved, federal courts have a further reasons for deference to the appropriate prison authorities."

In *Weaver v. Jago* (C.A.6, 1982), 675 F.2d 116, the Sixth Circuit addressed the issue of whether prison regulations may abridge the religious freedoms of inmates. The Sixth Circuit adopted a balancing test whereby the constitutional interests of a prisoner must be balanced against legitimate state interests concerning the operation of prisons.

In *O'Lone v. Shabazz* (1987), 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282, the United States Supreme Court, when addressing the issue of whether prison regulations may abridge the religious freedoms of inmates, did not apply the compelling state interest test established in *Sherbert* and *Yoder*, and did not apply the balancing test adopted by the Sixth Circuit in *Weaver*. Rather, the court held that if prison regulations are reasonably related to legitimate institutional goals and policies, the regulations must be upheld. The *O'Lone* court further held that prisons are not required to prove that there is no reasonable alternative by which inmates' religious rights may be accommodated without creating security problems. Under *O'Lone*, the inmate bears the burden of demonstrating that the logical connection between an existing regulation and its asserted goal is so remote as to render the regulation arbitrary or irrational.

In *Emp. Div. v. Smith* (1990), 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876, the Supreme Court outright rejected the compelling state interest test established in *Sherbert* and *Yoder*. The court instead applied a rational basis standard of review, thus permitting Oregon to employ both criminal laws and unemployment benefits laws to punish Native Americans who use peyote for religious purposes.

▮ Congress passed the Religious Freedom Restoration Act of 1993 with the express purpose of overruling *Emp. Div. v. Smith, supra,* and restoring the compelling interest test set forth in *Sherbert v. Verner* and *Wisconsin v. Yoder*. The Act provides that the state may substantially burden a person's exercise of religion only if the state demonstrates both that the application of the burden furthers a compelling state interest and that the application of the burden is the least restrictive means of furthering that compelling state interest.

In *Johnson v. Baker* (July 1, 1994), N.D.Ohio No. 5:93 CV 1016, unreported, the court noted that the Religious Freedom Restoration Act of 1993 also superseded the reasonable relationship standard that the United States Supreme Court announced in *O'Lone* for application in freedom of religion cases involving prisoners. The court reasoned that the Religious Restoration Act of 1993 expressly applies to "all federal and state law, and the implementation of that law, whether statutory or otherwise * * *." The court wrote as follows:

"The Senate Judiciary Committee report states that 'the Act's adoption of the compelling governmental interest standard test was intended to restore the traditional protection afforded to prisoners to observe their religions which was weakened by the decision of *O'Lone v. Shabazz.*' S.Rep. No. 111, 103rd Cong., 1st Sess. 11 (1993), U.S.Code Cong. & Admin.News 1993. Overall, the Senate report concluded that 'application of the Act to prisoner free exercise claims will provide a workable balancing of the legitimate interests of prison administrations with the Nation's tradition of protecting the free exercise of religion.' *Id.* In rejecting the reasonableness standard of *O'Lone,* the Senate Report adopts the balancing standard articulated in *Weaver v. Jago* [(C.A.6, 1982), 675 F.2d 116.]."

▮ We agree with the Northern District of Ohio in *Johnson.* The Religious Restoration Act of 1993 applies to freedom of religion cases involving prisoners. We note, however, that the Act bars only prison rules which "*substantially burden* a person's exercise of religion." (Emphasis added.) According to *Johnson,* if a prison rule substantially burdens a prisoner's exercise of religion, then the court must proceed to apply the *Weaver* balancing test whereby the constitutional interests of the prisoner are balanced against legitimate state interests concerning the operation of prisons.

▮ In the case *sub judice,* we find that the prison rules denying appellant a worship service apart from the general Islamic worship service and denying appellant a right to wear a "fez" rather than a "tarbush" do not substantially burden his exercise of religion. We note that appellees accommodate the majority of appellant's religious needs. Appellees permit appellant to participate in a generic Islamic worship service each week. Appellees permit appellant to wear a tarbush on his head, to visit and to correspond with clergy of his choice, to correspond with fellow adherents of their faith, and independently study their faith.

We note that the minor restrictions placed upon appellant's freedom of religion in this case pale in comparison to the substantial restrictions struck down in *Sherbert* and *Yoder.* In *Sherbert,* the plaintiffs lost unemployment benefits due to the observance of their weekly sabbath. In *Yoder,* the state forced the plaintiffs to attend school past the eighth grade contrary to their religious belief.

When we balance appellant's constitutional interests against the legitimate state interests concerning the operation of the Chillicothe Correctional Institution, we find no error with the trial court's decision granting summary judgment to appellees. The prison chaplain, in his affidavit, stated that the prison holds worship services for four generic groupings of prisoners—Protestant, Roman Catholic, Muslim, and Jewish. The services accommodate differences between denominations. The prison does not hold separate services for Lutheran and Baptist prisoners. They must worship together. The prison chaplain stated that to allow separate services for each denomination "would create demands which would far exceed our ability" to meet those demands, would "impact security in the institution," and would "probably require the hiring of additional personnel." He further stated that "it would not be possible to obtain responsible clergy" to conduct services for each denomination. For security reasons, inmates generally may not conduct unsupervised services.

With regard to the fez appellant desires to wear on his head, the prison chaplain noted that security concerns require that the fez be prohibited. Although the tarbush is worn close to the head, the fez is larger and may be used to conceal contraband.

In conclusion, we find that there is no genuine issue of material fact, that appellees are entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, and that conclusion is adverse to appellant. Thus, we find the trial court correctly granted summary judgment in favor of appellees.

Accordingly, based upon the foregoing reasons, we overrule appellant's assignment of error.

*Judgment affirmed.*

STEPHENSON and HARSHA, JJ., concur.