**ARTHUR, Appellant and Cross–Appellee,**

**v.**

**ARTHUR, Appellee and Cross–Appellant.**

[Cite as *Arthur v. Arthur* (1998), 130 Ohio App.3d 398.]

Court of Appeals of Ohio,
Fifth District, Fairfield County.

Nos. 97CA0071 and 98CA0023.

Decided Oct. 22, 1998.

*Gerald L. Stebelton,* for appellant and cross-appellee.

*Randy L. Happeney,* for appellee and cross-appellant.

WILLIAM B. HOFFMAN, Judge.

Plaintiff-appellant and cross-appellee Cindy A. Arthur ("wife") appeals the October 16, 1997 judgment entry/decree of divorce of the Fairfield County Court of Common Pleas, Domestic Relations Division, granting her a divorce from defendant-appellee and cross-appellant Michael J. Arthur ("husband") and approving a shared parenting plan for the couple's four minor children. Husband appeals that decree as well as the March 31, 1998 judgment entry finding him in contempt of court.

## STATEMENT OF THE FACTS AND CASE

Husband and wife were married in Vincennes, Indiana on August 15, 1981. Four children were born as issue of the marriage: Megan Jo (DOB 7/17/83), Eric M. (DOB 4/22/85), Jacob M. (DOB 11/12/87), and Mary K. (DOB 1/10/93).

Upon her graduation from high school in 1978, wife worked in a department store in the Vincennes, Indiana area. Following a brief marriage to another individual, wife met husband, who was working part-time in the same department store while attending Vincennes University. In 1983, husband completed an associate's degree in computer science. While husband attended school, wife supported the couple. After wife gave birth to their first child, Megan, in 1983, the couple decided wife would remain at home full-time.

In 1987, husband accepted a job offer in the Columbus, Ohio area. Around the same time, wife began regularly watching the television ministry of the World Harvest Church ("the Church"), which originates from Columbus. After the

family moved to Ohio, they attended the Church. In November, 1987, husband accepted a position with the Church as the Director of Computer Operations.

The Church became the focal point of the family. Their lives centered around the Church, including worship, friendships, and activities. The children attended the World Harvest Christian Academy ("the Academy"), a church-affiliated school. The children's contacts outside the Church were limited.

In 1994, husband left his position with the Church to accept a position with Cap Gemini America, Inc. Prior to leaving his employment with the Church, husband began to disassociate himself from the institution and its members.

In December 1995, husband informed wife he desired a divorce. On or about December 24, 1995, husband moved out of the marital residence. On January 12, 1996, wife filed a complaint for divorce in the Fairfield County Court of Common Pleas, Domestic Relations Division.

Via an agreed magistrate's entry dated March 26, 1996, the trial court entered temporary orders for a shared-parenting arrangement. Pursuant to the temporary orders, wife was designated the residential parent and legal custodian of the four children for school purposes. Husband was granted possession of the children on weekends and for short weeknight visits, subject to timely notice. Throughout the proceedings, husband and wife contested the issues of custody and the children's enrollment at the Academy.

The matter proceeded to trial. At trial, Dr. John Mason, the court-appointed psychologist, reiterated the concerns he voiced in his report to the trial court regarding the children's attendance at the Academy, which, he opined, shielded them from the real world. Mason testified, while in wife's custody, the children's outside contacts were limited to church members. Due to the lack of cooperation between husband and wife, Mason recommended shared parenting in order to avoid the development of parental-alienation syndrome.

Mason met with the three oldest children on several occasions. During the initial visit, the children expressed a desire to stay with wife and continue their education at the Academy. Although the children expressed little interest in living with husband, they indicated their desire to visit him on a regular basis. When the children originally expressed these desires, they had not been visiting husband because of his living arrangements.[1] After visits with husband commenced, the three children told Mason they wanted to live with husband. The children reiterated this position over the course of their visits with Mason.

Mason testified that sports are paramount in the boys' lives. With husband, the boys became involved in organized, competitive sports leagues. When Megan

---

1. Husband was cohabiting with another woman.

originally saw Mason, she stated that she considered living with husband because she did not want to attend Bible College for two years before she started regular college. During her last meeting with Mason, Megan told him that wife informed her she could make the decision regarding her attendance at Bible College.

Regarding the children's continued enrollment at the Academy, Mason expressed his concerns regarding the cloistering aspect of the school and the limited social contact the children had outside of the Church environment. The testimony revealed that the Academy has below average class sizes, problems with staffing, teachers who lacked practical experience, and a lack of curriculum. The extracurricular activities available to the children were limited and included only noncompetitive activities. A substantial portion of the school day was devoted to bible studies. All of the text books used at the school had a religious emphasis.

Dr. Jerry A. Olsheski, Assistant Professor of Counselor Education at Ohio University, testified regarding the vocational evaluation he conducted of wife at husband's request. Dr. Olsheski testified that wife's current earning capacity was approximately $12,300 per year to $18,148 per year. Wife informed the doctor of her intent to pursue a vocational training program in medical assisting and/or medical office technologies at the Fairfield Career Center. According to Olsheski, if wife completed the medical assisting program, her median annual wage would be $17,940 per year. He noted that the median annual wage for an office supervisor would be $27,196 per year. Wife also informed the doctor that she investigated a two-year associate's degree program in either medical assisting or medical office technologies through the Ohio University–Lancaster Branch.

After hearing all the evidence, the trial court entered findings of fact and conclusions of law on August 12, 1997. On October 16, 1997, the trial court filed the judgment entry/decree of divorce. Pursuant to the divorce decree, wife was named the residential parent for school purposes of Megan and Mary, and husband was named the residential parent for school purposes of Jacob and Eric. The trial court ordered husband to pay $1,359.96 per month plus poundage as child support. The payments were made via payroll deductions. The trial court ordered husband to pay spousal support in the amount of $2,760.60 per month plus poundage, from September 1, 1997, until July 1, 1998. Commencing July 1, 1998, until the sale of the marital residence, the amount was reduced to $2,060.60 per month plus poundage. Following the sale of the marital residence and until June 30, 2000, the amount was further reduced to $1,200 per month plus poundage. On June 30, 2000, husband's spousal support obligation terminates. The trial court did not retain jurisdiction to modify the spousal support award.

It is from the judgment entry/decree of divorce that wife prosecutes this appeal, raising the following assignments of error:

"I. The trial court abused its discretion by separating the four children and designing the father as residential parent for the parties' two sons pursuant to defendant's shared parenting plan.

"II. The trial court abused its discretion in the amount and duration of spousal support, providing that it was not modifiable and in failing to retain jurisdiction over spousal support."

Husband cross-appeals, raising the following assignments of error:

"I. The trial court erred as a matter of law and abused its discretion in ordering withholding from the appellee's income which exceeded the maximum amount which could be withheld pursuant to Revised Code Section 3113.21(D) and 15 U.S.C. 1673(B).

"II. The trial court abused its discretion in ordering the appellee to pay combined child support and spousal support which exceeded 50% of the appellee/cross-appellant's net income.

"III. The trial court erred and abused its discretion in awarding attorney fees to the appellant in the additional amount of $7,500 when the defendant–appellee/cross/appellant had paid attorney fees and litigation expenses during the pendency of this cause in excess of $15,000.

"IV. The trial court erred in this cause as a matter of law in ruling upon the appellant's motion, filed after the notice of appeal was filed, wherein the court modified the judgment entry-decree of divorce.

"V. The trial court erred and abused its discretion in finding the appellee/cross–appellant in contempt of court. Furthermore, the court's finding that the appellee/cross–appellant was in contempt of court is erroneous as a matter of law. Finally, the trial court erred in failing to find the appellant/cross-appellee in contempt of court."

Any additional facts relevant to our discussion of the assignments of error shall be contained therein.

I

In her first assignment, wife maintains that the trial court abused its discretion in separating the four children by ordering a shared-parenting plan.

The standard of review of an appellate court of a trial court's determination in a custody proceeding is abuse of discretion. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846, 849. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. We must look

to the totality of the circumstances in the case *sub judice* and determine whether the trial court acted unreasonably, arbitrarily, or unconscionably.

■ During a divorce proceeding, a trial court is required to allocate the parental rights and responsibilities for the care of the minor children pursuant to R.C. 3109.041(A). The trial court has two options when allocating parental rights and responsibilities. The court may either designate one parent as the residential parent and legal custodian who bears the primary rights and responsibilities for the care of the children, or may issue a shared-parenting order requiring the parents to share all or some of the aspects of the physical and legal care of the children. R.C. 3109.04(A)(1) and (2).

■ Despite the trial court's classification of the custody order as a shared-parenting plan and wife's attack on the same basis, the practical effect is a split-custody order. Generally, this court would not encourage a trial court to resolve a custody dispute in such a manner; however, under the facts of the case *sub judice,* we do not find that the trial court abused its discretion in ordering split custody.

The testimony at trial revealed that the children, particularly the boys, had interests outside the activities available at the Church and the Academy. By designating husband as the residential parent of Eric and Jacob, the court gave the boys an opportunity to engage in organized sports, activities which were extremely important to them.

Although the trial court's custody determination results in a separation of the children, the record reveals that the order establishes an extensive visitation schedule for wife with the boys, for husband with the girls, and for the children together. Pursuant to the order, the children are together one hundred eighty-five whole days during the year, and seventy-two partial days during the year, resulting in only one hundred eight days of separation.

■ In support of her position, wife contends that the trial court improperly considered her religious affiliation when the court determined that she should not be designated the residential parent for all the children. Wife relies on *Pater v. Pater* (1992), 63 Ohio St.3d 393, 588 N.E.2d 794, in which the Ohio Supreme Court held:

"A parent may not be denied custody on the basis of his or her religious practices unless there is probative evidence that those practices will adversely affect the mental or physical health of the child. Evidence that the child will not be permitted to participate in certain social or patriotic activities is not sufficient to prove possible harm." *Id.* at paragraph one of the syllabus.

A review of the trial court's findings of fact and conclusions of law belies wife's argument that the trial court improperly considered wife's religious affiliation. In its findings of fact, the trial court stated its concerns about the education the children were receiving at the Academy, including the below-average class sizes, the problems with teacher staffing, the lack of teacher experience, the lack of curriculum, and the sheltered lifestyle. The trial court did not indicate any concerns regarding the religious philosophy of the Church. Rather, the trial court's concerns centered around the quality of education the children were receiving. The testimony regarding the Worthington Public School System revealed that the public school the children would attend offered programs for the gifted and a wide curriculum.

■ We agree with *Pater, supra,* that a parent may not be denied custody on the basis of his or her religious practices unless such practices adversely affect the mental or physical well-being of the child. We find that the trial court in the instant action did not deny wife custody of all the children based upon her affiliation with the Church. Rather, the trial court merely raised concerns about the education the children were receiving at a school that happens to be church-affiliated.

Wife's first assignment of error is overruled.

## II

In her second assignment of error, wife contends that the trial court abused its discretion in ordering a spousal support award that decreases over time and eventually terminates. Additionally, wife takes issue with the trial court's failure to reserve jurisdiction over the issue of spousal support.

■ The applicable standard of review is an abuse of discretion, which is set forth above. See *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 20 O.O.3d 318, 421 N.E.2d 1293.

Pursuant to R.C. 3105.18(C)(1), a trial court must consider certain factors in making determinations of spousal support:

"In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

"(a) The income of the parties, from all sources * * *;

"(b) The relative earning abilities of the parties;

"(c) The ages and the physical, mental, and emotional conditions of the parties;

"(d) The retirement benefits of the parties;

"(e) The duration of the marriage;

"(f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;

"(g) The standard of living of the parties established during the marriage;

"(h) The relative extent of education of the parties;

"(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

"(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

"(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

"(*l* ) The tax consequences, for each party, of an award of spousal support;

"(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

"(n) Any other factor that the court expressly finds to be relevant and equitable."

Further, trial courts are governed by the standard and guidelines imposed by the Ohio Supreme Court in *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 554 N.E.2d 83, paragraph one of the syllabus:

"Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities."

The trial court ordered spousal support as follows:

"11. Spousal Support:

"Defendant [husband] shall pay to Plaintiff [wife], as and for spousal support, the sum of $2,760.60 per month, plus poundage commencing September 1, 1997 and continuing until July 1, 1998. Commencing July 1, 1998 and continuing until such time as said real estate has been sold and the closing has occurred the

Defendant shall pay to Plaintiff, as and for spousal support, the sum of $2,060.60 per month, plus poundage. Following the sale and closing of the parties' real estate, the Defendant shall pay to Plaintiff, as and for spousal support, the sum of $1,200 per month, plus poundage until June 30th of the year 2000 at which time Defendant's obligation for payment of spousal support to the Plaintiff shall terminate. Defendant's obligation for payment of spousal support to the Plaintiff shall terminate upon the happening of the earliest of any of the following events: 1) the death of the Plaintiff, her remarriage or cohabitation of the Plaintiff with an unrelated male, adult person or July 1, 2000. The aforesaid spousal support shall not be modifiable.

"The duration of spousal support set forth herein is contemplated to be through Plaintiff's projected completion of one year of education at the Fairfield Career Center, plus an additional one year for purposes of her obtaining employment and stabilizing her income. In making the aforesaid orders of spousal support, the Court has concluded that there are insufficient funds for the minor children to attend private school and these amounts have been deleted from the monthly living expenses of the Plaintiff. The Plaintiff may select the school for Megan and Mary to attend but her choice to be based upon the funds available and the needs of her daughters.

"The determination of spousal support herein is made after consideration of the factors set forth in R.C. Section 3105.171 and 3105.18."

In her brief to this court, wife asserts that the trial court arbitrarily reduced the amount of the spousal support over the duration of the award. A review of the record reveals that the figure of $2,760.60 represents $1,260.60 in monthly installment payments of the three mortgages on the marital property, and $1,500 in actual spousal support. The trial court ordered husband to continue to pay the three mortgages until July 1, 1998.

The trial court ordered husband to continue to provide wife with the sums for the mortgage payments beyond July 1, 1998, if the residence was not sold, but ordered wife to reimburse husband for all equity payments at the time the property was sold and pay rent in the amount of $400 per month. Accordingly, the reduction in spousal support to $2,060.60 represents $1,200 in spousal support, and $1,260.60 in monthly mortgage payments, less the wife's $400 monthly rental payment. The spousal support was reduced from $1,500 to $1,200. The difference represents wife's $300 tuition at the Fairfield Career Center. The trial court anticipated that wife would complete her program at the career center by July 1, 1998.

After the sale of the marital residence, husband was obligated to pay spousal support in the amount of $1,200 per month until June 30, 2000. This reduction

takes into consideration the termination of husband's obligation to provide wife with the monthly mortgage payments and the trial court's projection that wife would be employed and her income would be stabilized by the year 2000.

Although the spousal support award initially appears to be arbitrarily reduced, upon review of the trial court's rationale, we find that the court did not abuse its discretion with regard to the amount and duration of the award.

■■■ We now turn our attention to wife's assertion that the trial court abused its discretion in failing to retain jurisdiction to modify the spousal support award. As discussed above, a portion of the spousal support award represents the monthly installment amount of three mortgages on the marital property, a portion represents wife's tuition at the Fairfield Career Center, and the remainder represents living expenses. The total amount is reduced over time in anticipation of changes in wife's financial circumstances.

If husband fails to pay the spousal support pursuant to the order, wife's ability to complete her schooling in the time frame anticipated by the trial court is frustrated. Wife could not continue her schooling without the amounts received in spousal support. Therefore, she would not achieve the financial stability anticipated by the trial court and used as a basis for terminating spousal support. Under the circumstances in the case *sub judice*, we find that the trial court should have retained jurisdiction to modify the amount of spousal support until the termination date of the award.

Wife's second assignment of error is sustained as to this issue only.

## CROSS–APPEAL I & II

In his first cross-assignment of error, husband argues that the trial court erred in ordering the withholdings from his monthly income for spousal support and child support payments in excess of the withholding limits established by Ohio and federal law. In his second cross-assignment of error, husband asserts that the trial court abused its discretion in ordering a combined child support and spousal support award which exceeds fifty percent of his net income.

■■■ At the time of trial, husband's net income was approximately $5,400 per month. The trial court ordered husband to pay child support in the amount of $1,359.96 per month and spousal support in the amount of $2,760.60 per month for a total of $4,120.56 per month.

We find that the trial court's ordering an amount withheld from husband's wages, which constitutes over seventy-five percent of husband's monthly income, clearly exceeds the withholding limits imposed by R.C. 3113.21(D) and Section 1673(b), Title 15, U.S.Code, and is erroneous. Accordingly, we vacate that

portion of the judgment entry/decree of divorce and remand this issue to the trial court to determine, pursuant to this opinion, a modification of husband's wage withholdings for spousal support and child support to comply with state and federal withholding limits.

Husband's first cross-assignment of error is sustained.

■ Although we find that the trial court erred in ordering withholdings in excess of the limits established by Ohio and federal law, we do not find that the trial court abused its discretion in ordering husband to pay combined support in excess of fifty percent of his net income. The withholding limits imposed by R.C. 3113.21 and Section 1673(b), Title 15, U.S.Code do not impose limitations on a trial court's ability to order support in excess of those limits, but only restricts the trial court's ability to order wage withholdings beyond those limits.

Husband's second assignment of error is overruled.

## III

In his third cross-assignment of error, husband contends that the trial court erred and abused its discretion in ordering him to pay $7,500 in attorney fees to wife.

■ A trial court's determination to grant or deny a request for attorney fees will not be disturbed absent an abuse of discretion. *Motorists Mut. Ins. Co. v. Brandenburg* (1995), 72 Ohio St.3d 157, 648 N.E.2d 488.

■ In the decree of divorce, the trial court found that husband did not have the wherewithal to pay all of wife's attorney fees, but ordered a partial payment of $7,500. Wife submitted exhibits regarding her attorney fees in the matter, showing a total in excess of $23,000. The trial court questioned the reasonableness and the necessity of the fees incurred by wife for her first attorney because the court found the attorney fees were incurred when wife "repeatedly reache[d] an agreement and then immediately file[d] to set aside the agreement." Upon review of the record, we find that the trial court did not abuse its discretion in ordering husband to pay $7,500 in attorney fees, which represents only a portion of the total fees wife incurred in the proceedings.

Husband's third cross-assignment of error is overruled.

## IV

■ In his fourth assignment of error, husband submits that the trial court erred in ruling upon a motion wife filed after she filed the notice of appeal. Husband maintains that the trial court's ruling on the motion is a modification of

the judgment entry/decree of divorce. Furthermore, husband claims that the trial court did not have jurisdiction to address the motion.

Civ. R. 75(G) provides:

"Relief pending appeal. A motion to modify, pending appeal, either a decree allocating parental rights and responsibilities for the care of children, or a spousal or other support order, *shall be made to the trial court in the first instance, whether made before or after a notice of appeal is filed.* The trial court may grant relief upon terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party and in the best interests of the children involved. Civ. R. 62(B) does not apply to orders allocating parental rights and responsibilities for the care of children or a spousal or other support order. *An order entered upon motion under this rule may be vacated or modified by the appellate court.* The appellate court has authority to enter like orders pending appeal, but an application to the appellate court for relief shall disclose what has occurred in the trial court regarding the relief." (Emphasis added.)

Although captioned a motion for relief pending appeal, wife's January 12, 1998 motion is, in essence, a request for modification of the spousal support order. Although husband contends that the divorce decree did not require him to pay the mortgages, as discussed above, husband was ordered to pay wife sums sufficient to meet the mortgage obligations, which wife was required to forward to the appropriate bank.

Pursuant to the trial court's January 16, 1998 judgment entry granting wife's motion for relief, husband was ordered to pay the same amount of spousal support, *i.e.,* $1,500 per month, but, rather than provide wife with the monies needed to pay the mortgages, husband was ordered to pay the mortgage indebtedness directly to the appropriate credit institutions, an amount totaling $1,260.60 per month. As a result, husband's monthly obligation did not change. The trial court found such modification necessary to facilitate compliance with divorce decree.

We find that the trial court had the authority pursuant to Civ.R. 75(G) to grant the relief requested in wife's motion in order to secure the rights of wife and in the best interest of the children.

Husband's fourth cross-assignment of error is overruled.

V

In his fifth cross-assignment of error, husband maintains that the trial court erred and abused its discretion in finding him in contempt of court and in failing to find wife in contempt.

■ The applicable standard of review is abuse of discretion, which is set forth above.

■ On December 23, 1997, during the pendency of the instant appeal, wife filed a motion for contempt alleging husband had failed to comply with the decree of divorce as it relates to spousal support. Thereafter, husband filed a cross-motion for contempt alleging wife failed to comply with the divorce decree by failing to make the mortgage payments for November 1997, December 1997, and January 1998. After a hearing conducted on March 18, 1998, the trial court found husband in contempt of court. This finding was memorialized in a judgment entry dated March 31, 1998. The trial court did not make a finding regarding husband's allegations regarding wife.

At the hearing on the motions for contempt, the evidence revealed that husband had deliberately and intentionally kept his net income as low as possible by keeping his federal income tax withholding high and starting an IRA through wage withholding, thereby limiting the amount his employer was permitted to attach and submit to the Child Support Enforcement Agency. The testimony further revealed that wife was unable to pay the mortgages because husband did not pay his full support obligation.

Based upon the foregoing and upon our review of the entire record of the contempt hearing, we find that the trial court did not abuse its discretion in finding husband in contempt.

Under this cross-assignment of error, husband also asserts that the trial court erred in failing to find wife in contempt of court. The trial court's March 31, 1998 judgment entry does not include a finding regarding husband's cross-charge of contempt.

■ When a trial court fails to rule upon a motion, an appellate court generally will presume that the trial court overruled the motion. *Akbar-el v. Muhammed* (1995), 105 Ohio App.3d 81, 89, 663 N.E.2d 703, 708. See, also, *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 223, 631 N.E.2d 150. Husband's allegations of contempt were based upon wife's failure to pay the mortgages. Although wife was required to make the actual payments on the mortgages, husband was required to provide wife with the funds to do so. Because husband failed to comply with his support obligations, wife was unable to fulfill her obligations under the decree of divorce. Accordingly, we find that the trial court did not err in overruling husband's motion for contempt.

Husband's fifth assignment of error is overruled.

The judgment entry of the Fairfield County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part, and the matter is remanded for further proceedings in accordance with this opinion and the law.

*Judgment accordingly.*

FARMER, P.J., and JOHN W. WISE, J., concur.