OPINION
Defendant-Appellant, James Wombold, appeals from a trial court decision dismissing Wombold's second petition for post-conviction relief. Both petitions arose from Wombold's conviction and sentence on attempted rape and gross sexual imposition. Originally, Wombold was charged in 1994 with three counts of rape and three counts of gross sexual imposition by force or threat of force. Subsequently, Wombold pled guilty to the lesser included charge of attempted rape and one count of gross sexual imposition. He then received an indeterminate sentence of 6-15 years on the attempted rape charge and a definite sentence of one year on the gross sexual imposition charge, with the sentences to be served concurrently. After sentencing, Wombold filed a timely appeal, contending that he was coerced into pleading guilty. We found no evidence of coercion in the record and affirmed the trial court judgment. See State v. Wombold (Feb. 16, 1996), Montgomery App. No. 14873, unreported, discretionary appeal not allowed, 77 Ohio St.3d 1447.
On May 1, 1996, Wombold filed a pro se petition for post-conviction relief, claiming that he had been promised probation in exchange for pleading guilty. The trial court granted summary judgment in the state's favor, based on res judicata. However, we reversed, because Wombold's affidavits raised issues outside the record. See State v. Wombold (June 20, 1997), Montgomery App. No. 16237, unreported.
On remand, the trial court held an evidentiary hearing. After hearing testimony from Wombold, Wombold's mother, and the defense attorney who represented Wombold at the time of the guilty plea, the trial court concluded that the attorney did not promise probation to Wombold. As a result, the court denied the petition. We then affirmed, finding the decision supported by competent, credible evidence, i.e., the defense attorney's testimony. See State v. Wombold (Feb. 19, 1999), Montgomery App. No. 17191, unreported, discretionary appeal not allowed,85 Ohio St.3d 1459.
Subsequently, on April 10, 2000, Wombold filed a second petition for post-conviction relief with the trial court. In this petition, which was again filed pro se, Wombold alleged ineffective assistance of trial counsel. In particular, Wombold claimed his trial counsel failed to tell him that the parole board had unconstrained discretion and a complete lack of accountability in making parole decisions. Wombold also said his trial counsel did not tell him that the parole board would use his juvenile record in considering parole.
Wombold attached a "Criminal History/Risk Score" form to the second petition. This form was apparently prepared by the Ohio Adult Parole Authority (APA), and is dated November 18, 1998. The form is used to evaluate and score certain risk items for potential parolees, such as prior adult or juvenile convictions, prior commitments, and parole revocations. No score was added for four of the items on the list. However, two items (prior convictions and "parole revocation — juv.") resulted in a total score of "2" for Wombold.
Also attached to the petition was a document entitled "Record," dated November 25, 1998. This document continued any further consideration of Wombold's release on parole until November, 2008. The reason stated was as follows:
 Mr. Wombold is a Category 10 (Risk 2) as he did purposely compel the victim (age 14) by threat of force to engage in sexual conduct. His guideline range is 150-210; he has served 49 months. His last disciplinary ticket was 6-25-97. His aggregate score (new guideline range) is 150-212.
On April 20, 2000, the State filed a motion to dismiss Wombold's post-conviction petition. In its motion, the State agreed that Wombold was unavoidably prevented from learning the facts to support his current petition because he did not come up for parole until November, 1998. On the other hand, the State claimed that Wombold's trial counsel did not have an affirmative duty to tell his client about the APA's discretionary powers. In this regard, the State focused on the fact that Wombold was not promised parole and knew he could spend a maximum of 15 years in prison. According to the State, the APA's discretion is not punishment and the effect of its decisions are not "definite, immediate, and automatic." The State, therefore, argued that APA review is a collateral consequence that Wombold's counsel did not have to disclose.
Although the State's motion was timely filed, the State did not attach a signed certificate of service to the motion. About one week after the State's motion, or on April 27, 2000, Wombold filed an "amendment" to his post-conviction petition. In the amended petition, Wombold claimed that the State did not keep the plea bargain. As proof, Wombold attached an affidavit from Donna Hofacker, the alleged victim's mother. This affidavit revealed that Hofacker had said during the trial that she would like Wombold to be on probation. Hofacker further testified that she was "under the impression" that Wombold had been promised probation in exchange for a guilty plea. Wombold claimed he was unaware of these facts when he filed the first petition for post-conviction relief.
On May 8, 2000, Wombold filed motions to strike the State's motion to dismiss, based on the State's failure to sign the certificate of service, and the State's failure to attach unreported copies of cases to its motion. Subsequently, on May 9, 2000, the State filed a motion, asking to amend its motion to dismiss to correct procedural defects. On the same day, the State filed the amended motion to dismiss, which contained both the omitted certificate of service and the unreported cases.
Also on May 9, 2000, the State asked the court to deny Wombold leave to amend his post-conviction petition. The State's request was based on two grounds. First, the State relied on the res judicata effect of the previous post-conviction decision. Second, the State argued that the contents of Hofacker's affidavit, even if true, were insufficient to warrant a hearing. Specifically, the affidavit did not state facts meriting withdrawal of the guilty plea, because Hofacker did not say where her impressions about probation came from.
On May 24, 2000, Wombold filed a memorandum opposing the State's motion for leave to amend. Wombold's primary argument was that the State's motion to dismiss did not legally exist because the State had failed to comply with filing requirements. Wombold also claimed he would suffer material prejudice if the State were allowed to amend its pleading, since he would, thereby, be deprived of the right to amend his own pleading without first obtaining leave of court.
Ultimately, the trial court issued a decision on July 11, 2000, ruling on the pending matters. As an initial matter, the court rejected Wombold's amended petition, because Wombold failed to obtain leave of court before filing the amendment. However, the court did go on to consider the content of the amended petition. In this regard, the court agreed with the State that the facts in the petition were insufficient to overcome the res judicata bar of the prior litigation.
Next, the court found that Wombold's motion to strike was moot. Specifically, the court concluded that the State had corrected its motion to dismiss by filing an amended motion with "leave of court." The court additionally observed, without discussion, that the amendment did not affect Wombold's substantial rights.
Finally, the court rejected Wombold's ineffective assistance of counsel claims for two reasons. First, the court agreed with the State that parole eligibility is a collateral consequence. Second, the court found that Wombold did not present sufficient evidence of ineffectiveness or prejudice. In particular, the court relied on the lack of evidence that Wombold would have refused to plead guilty if he knew how parole eligibility would be determined. The court also focused on Wombold's failure to set out any asserted defenses to the charges. Accordingly, the court granted the State's motion to dismiss.
Wombold has timely appealed, pro se, and now raises the following assignments of error:
I. It was error for the Court of Common Pleas to sustain Plaintiff-Respondent's motion to dismiss since legally there was no such motion before the court.
II. It was error for the Court to grant leave to amend a motion which did not exist legally thereby denying the Petitioner of his substantive right to amend his post-conviction petition.
III. It was error for the Court to deny Petitioner the right to amend his petition since the Petitioner had the right to so amend without leave of the court since no response had legally been made by the Respondent.
IV. It was error for the Court to deny the Petitioner the right to file his amendment on the grounds of res judicata in the [sic] light of O.R.C. 2953.23(A)(1)(a).
V. It was error for the Court to rule that the Defendant was unable to show how counsel was deficient in his duties toward the Defendant when it was the duty to advise the Defendant that the agency of the State could modify the terms of the plea bargain at will and that the State could modify the terms of the sentence under the guise of indirect collateral consequences.
After considering the assignments of error, we find them without merit. Although some procedural errors occurred below, they did not prejudice Wombold. Consequently, the judgment of the trial court will be affirmed.
 I
This case presents some unusual procedural twists, which are covered by the first three assignments of error. As we mentioned, Wombold says in the first assignment of error that the trial court should not have granted the State's motion to dismiss because the motion was not legally before the court. This argument is based on the State's failure to include a signed certificate of service with its original motion to dismiss.
In the second assignment of error, Wombold argues that the trial court erred by allowing the State leave to amend a legally non-existent motion. Wombold claims the court's action was an abuse of discretion because it caused material prejudice to Wombold's rights. The alleged material prejudice arises from the fact that if the State's motion did not legally exist, Wombold would have been allowed to amend his post-conviction petition without leave of court. Instead, however, the court denied Wombold's attempt to amend.
The third assignment of error basically repeats the first two assignments of error. In this assignment of error, Wombold contends that he had the right under Civ. R. 15(A) to amend his pleading as a matter of course before a responsive pleading was served. Accordingly, Wombold believes the trial court abused its discretion by failing to allow the amendment to proceed.
As a preliminary point, we note that the trial court did not expressly give the State permission to amend the motion to dismiss. The court did say in its dismissal entry that the State had been granted leave to amend the motion to dismiss. However, the record does not reflect that fact. Instead, the State simply filed the amended motion to dismiss on the same day it requested leave, before receiving permission from the court. By the same token, the trial court obviously would have given the State leave to file an amendment, given the comments in the court's decision.
The question then, is whether the court's prior failure to expressly grant permission precluded the court from considering the motion to dismiss. Wombold does not raise this precise point, due to his mistaken belief that the court gave the State permission to amend. However, Wombold's assignments of error do rely on the argument that failure to include a certificate of service completely invalidated the motion to dismiss. Additionally, Wombold claims the court could not let the State amend its motion, because the amendment would interfere with Wombold's own ability to amend his pleading. We disagree with both contentions.
Concerning amendment of proof of service, Civ.R. 4.6(B) provides that
 [t]he court within its discretion and upon such terms as are just, may at any time allow the amendment of any process or proof of service, unless the amendment would cause material prejudice to the substantial rights of the party against whom the process was issued.
Contrary to Wombold's belief, amendment of proof of service would not normally cause prejudice to a person in his position, because litigants have an absolute right to amend a complaint or petition at any time before an opponent files a responsive pleading. Thus, unless the motion to dismiss was a responsive pleading, Wombold had an absolute right to amend his petition.
In denying Wombold's amendment, the trial court relied on R.C.2953.21(F), which says that petitioners may amend petitions with or without leave or prejudice to the proceedings at any time before the answer or motion is filed. Based on this statute, the trial court concluded that Wombold clearly needed leave of court to file an amendment, since the State had already filed its motion to dismiss. However, the court's interpretation was incorrect. Specifically, we have previously held that motions filed in post-conviction pleadings are not "responsive pleadings," and that "only an answer or other form of Civ.R. 7(A) pleading that the state files cuts off a petitioner's absolute right to amend his petition pursuant to Civ.R. 15(A)." State v. Wilkins (1998), 127 Ohio App.3d 306, 311, (1999), discretionary appeal dismissed as having been improvidently allowed, 85 Ohio St.3d 1213. See, also, State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs. (1992),65 Ohio St.3d 545, 549 [holding that motions to dismiss are not responsive pleadings under Civ.R. 7(A)].
In view of the above authority, the trial court erred when it refused to let Wombold file an amended petition. The error was harmless, however, because Wombold's substantial rights were not affected. See, e.g., Civ.R. 61, and Madison Twp. Bd of Trustees v. Donohoo (Oct. 12, 1994), Montgomery App. No. 14007, unreported, p. 4. Specifically, Wombold's substantial rights were not affected because the trial court did consider the contents of the amended petition. However, the court simply felt that the new evidence was insufficient to overcome the res judicata barrier of the prior proceeding.
Furthermore, the trial court's failure to specifically grant leave before the time of its final decision did not prevent the court from considering the State's motion to dismiss. In this regard, Wombold argues that the lack of a certificate made the State's motion to dismiss a legal nullity. Wombold thus argues that there was nothing to amend. Again, we disagree.
Civ.R. 5(A) requires service of every written motion on each of the parties. Under Civ.R. 5(B), served copies are to be accompanied by "a completed copy of the proof of service required by division (D)" of the rule. Regarding proof of service, Civ. R. 5(D) says that:
 [a]ll papers, after the complaint, required to be served upon a party shall be filed with the court within three days after service. * * * Papers filed with the court shall not be considered until proof of service is separately endorsed thereon or separately filed.
(Emphasis added). As we mentioned, Wombold says these provisions effectively nullify the legal effect of papers that are not accompanied by proof of service.
As originally enacted, Civ.R. 5(D) provided that papers would not be considered "unless" proof of service was endorsed thereon. However, in 1971, the rule was amended to change "unless" to "until." The Staff Notes discussing the amendment outline its intended purpose as follows:
 Prior to the amendment an attorney who, for example, filed an answer with the court but failed to endorse proof of service thereon might technically have been considered to be in default of answer because his answer would not be considered "unless" proof of service had been endorsed thereon. To avoid such possible technical interpretation, the word "unless" has been changed to "until" so that an attorney who fails to endorse service thereon will have an opportunity subsequently to endorse proof of service on the paper or separately file the necessary proof of service in order to correct his clerical error.
In Enyart v. Columbus Metro. Area Community Action Organ. (Sept. 6, 1994), Franklin App. No. 93APE12-1658, unreported, the Tenth District held that a trial court was precluded from considering a notice of appeal from an arbitration decision because the notice did not contain a certificate of service. Id. at p. 3. However, the court's decision clearly indicates that the notice could have been considered if the litigant had tried to correct the faulty notice. This was so, even though the time for filing the notice of appeal had expired. In this regard, the Tenth District stressed that the trial court could have entertained a Civ.R. 60(B) motion to extend the time for filing a corrected notice of appeal. Unfortunately, even though the appealing party actually filed a Civ.R. 60(B) motion, it did not request an extension of time, nor did it ever try to correct the faulty notice. As a result, the Tenth District held that "until a complete and proper notice of appeal is properly filed, the trial court cannot proceed." Id. at 4. This interpretation is consistent with the Staff Notes, which imply that the barrier is not absolute, but only exists until proof of service is corrected.
In the present case, the State promptly asked for leave to file an amended motion, and also filed the proper certificate of service. Although the trial court erred in thinking it had already granted the State's motion, this was the only error, and it was harmless. In this regard, we distinguish Amiri v. Thropp (1992), 80 Ohio App.3d 44, which was cited by Wombold. Unlike the defendant in Amiri, Wombold did not allege that he failed to receive the State's original motion to dismiss. To the contrary, the record clearly reveals that Wombold received the State's motion and that the failure to include a certificate of service was a harmless, technical, and easily corrected oversight.
Accordingly, the first, second, and third assignments of error are without merit and are overruled.
 II
As we mentioned earlier, Wombold's untimely and successive post-conviction petition, as amended, raised two claims: 1) that the mother of the alleged victim asked for Wombold to receive probation and also thought his guilty plea was based on a grant of probation; and 2) that trial counsel was ineffective by failing to inform Wombold of the true status of the APA's discretionary and arbitrary power concerning parole. These items are discussed in Wombold's fourth and fifth assignments of error, respectively.
Initially, we note that Ohio courts cannot consider successive post-conviction petitions, except where a petitioner shows he or she was "unavoidably prevented" from learning the facts on which the petition is based. A petitioner must also show by "clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted." R.C. 2953.23(A). These factors have been said to exemplify "manifest injustice" under Crim R. 32.1. State v Hill (1998), 129 Ohio App.3d 658, 661. We have also held that they are jurisdictional in nature. See, e.g., State v. Reeves (Dec. 10, 1999), Montgomery App. Nos. 17631, 17768, unreported, p. 2.
In reviewing the guilty plea issue, we agree with the trial court that no manifest injustice occurred. Wombold has already had one evidentiary hearing on the probation issue, and the record lacks any explanation of how or why Wombold was prevented from learning about the pertinent facts. Wombold claims on appeal that some sort of prosecutorial conspiracy existed, but he offered no facts to support such a theory. Furthermore, we agree with the trial court that the affidavit is conclusory. As the State notes, the affiant does not even say who gave her the "impression" that Wombold was supposed to receive probation.
Although pro se litigants are given more lenient treatment, "broad, conclusory statements" are not enough to warrant a hearing. State v. Johnson, (June 19, 1998), Montgomery App. No. C.A. 16740, unreported, p. 2, and Akbar-el v. Muhammed (1995), 105 Ohio App.3d 81, 85. This would be particularly true in situations where successive petitions are involved. Specifically, Wombold has already been allowed one evidentiary hearing for purposes of challenging a record that demonstrated compliance with Crim. R. 11. As the Ohio Supreme Court noted in State v. Calhoun (1999), 86 Ohio St.3d 279, 288-89, "a record reflecting compliance with Crim. R. 11 has greater probative value than contradictory affidavits." That statement is even more compelling where a defendant has already been given one chance to challenge the record, and has failed.
Accordingly, the fourth assignment of error is without merit and is overruled.
In the fifth assignment of error, Wombold claims trial counsel was ineffective because he failed to discuss the APA's arbitrary and discretionary power over parole. We agree with the State that Wombold would not have known of these alleged facts before his November, 1998 parole hearing. As a result, the first prerequisite for an untimely petition has been met.
The second predicate for an untimely petition requires clear and convincing evidence that a reasonable factfinder would not have found the defendant guilty of the offense absent the constitutional error. This factor is somewhat difficult to apply in cases like the present, which involve ineffective assistance of counsel for guilty pleas. However, the test for deciding if a petitioner was denied effective assistance of counsel is whether, under all the circumstances, the accused "`had a fair trial and substantial justice was done.'" Calhoun, 86 Ohio St.3d at 289
(citation omitted). To make this decision, courts use the following two step process:
 "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."
Id. (citation omitted).
As we mentioned above, the trial court rejected the ineffective assistance of counsel claim for several reasons. First, the court agreed with the State that parole eligibility is a "collateral consequence." Second, the court found that Wombold did not present sufficient evidence of ineffectiveness or prejudice. In particular, the court pointed to the lack of evidence that Wombold would have refused to plead guilty if he knew how parole eligibility would be determined. And finally, the court relied on Wombold's failure to set out any asserted defenses to the charges.
In State v. Xie (1992), 62 Ohio St.3d 521, the Ohio Supreme Court refused to allow a defendant to withdraw a guilty plea, even though his attorney had admittedly given him incorrect advice about parole eligibility. Among other things, the court stressed that "a defendant who bases a plea decision on parole eligibility will often be relying on a factor beyond the prediction of defense counsel, and beyond the actual control of a defendant." Id. at 525. Although Xie involved an attempted withdrawal of a guilty plea instead of a post-conviction petition, we find its reasoning pertinent to the present situation. If defense attorneys cannot accurately predict parole eligibility, they can have no essential duty to their clients in this regard.
We also agree with the State and the trial court that the APA's role in evaluating parole is in the nature of a collateral, not a direct consequence of a plea. As a result, neither the court nor Wombold's defense attorney had a duty under Crim. R. 11 to inform Wombold of this type of consequence of his plea. See, e.g., State v. Condron (March 27, 1998), Montgomery App. No. 16430, unreported, p. 7, affirmed,84 Ohio St.3d 11.
In view of the lack of duty, we do not reach the issue of whether Wombold was prejudiced by his counsel's actions. This issue is simply irrelevant, since no one could predict what the parole board might do, some years down the road. We do agree, however, that Wombold's failure to offer any defense to the charges would not support a finding of prejudice.
Based on the preceding discussion, we also find the fifth assignment of error without merit.
Although we have rejected Wombold's claims, we must mention that we are troubled by the parole evaluation documents attached to Wombold's post-conviction petition. While the record is not completely clear, the documents appear to indicate that Wombold was placed in "category 10," with a guideline range of 150-212 months to be served before his release would be considered. Compare, Randolph v. Ohio Adult Parole Auth. (Jan. 21, 2000), Miami App. No. 99 CA 17, unreported, p. 1, discretionary appeal not allowed, 88 Ohio St.3d 1512 (involving classification of category 11, with guideline range of 180 to 240 months before consideration of release). Notably, the guideline range exceeds Wombold's maximum sentence, i.e., it extends from 12.5 years to about 17.66 years.
In Randolph, we observed that the Ohio Department of Rehabilitation and Correction adopted guidelines in 1998 to help the APA make "consistent" and "fair" decisions. Id. The guidelines consist of a grid which lists thirteen "offense seriousness" categories on a vertical axis and four "risk of recidivism" categories on a horizontal axis. Intersection of the categories on these axes then provides a guideline range of months the offender will serve before his or her release is considered. Id.
The defendant in Randolph was convicted of voluntary manslaughter, which was an offense assigned to category 9. However, instead of placing Randolph in this category, the APA placed him in the category for murder (with which he was originally charged). Murder was assigned to category 11. The effect was to increase the parole guideline range from 84 to 120 months to 180 to 240 months. Randolph argued that this breached the plea agreement he had with the State. Significantly, Randolph did not dispute that the APA could consider the circumstances surrounding the offense. He also conceded that the APA could require him to serve the maximum sentence imposed by the trial court. By the same token, Randolph felt that the APA should place him in the appropriate offense seriousness category when it began its decision-making process. We agreed with Randolph's position. Id. at 4.
Subsequently, we reached a similar decision in Lee v. Ohio Adult Parole Auth. (Apr. 7, 2000), Montgomery App. No. 17979, unreported. In Lee, the APA placed the defendant in the category of aggravated murder, which, again was the crime with which he was originally charged. However, the defendant pled guilty instead to the lesser charge of involuntary manslaughter. The result of the APA's decision was that the defendant would be required to serve 30 years to life before being eligible for consideration of parole, rather than 9 to 11 years (ten of which he had already served). Id. In rejecting the APA's approach, we noted that "[i]f the action of the Authority is sanctioned, then plea bargaining will be a thing of the past in Ohio, at least as to defendants facing incarceration in prison." Id. at p. 1, n. 1.
Although the record before us is sparse, the same type of situation seems to be involved in the present case. At the time of his original parole consideration in 1998, Wombold had already served 49 months, or more than four years of the minimum six year sentence. Based on the classification of category 10 and risk 2, Wombold's parole hearing was continued until November, 2008, at which time he would have served approximately fourteen years, or almost all of the maximum fifteen year sentence. Again, while the APA may require Wombold to serve the maximum sentence, the starting point of analysis must be correct. Notably, we do not have the grid classifications before us, but we think it is unlikely that attempted rape and gross sexual imposition fall between voluntary manslaughter (9) and murder (11). For example, under current law, voluntary manslaughter is a first degree felony and attempted rape is only a second degree felony. Under pre-Senate Bill 2 law, voluntary manslaughter was an aggravated first degree felony, while attempted rape was an aggravated second degree felony. See R.C. 2903.03, R.C. 2907.02, R.C. 2923.02(E), and former R.C. 2903.03, R.C. 2907.02, and 2923.02(E). We also question how such use of the guidelines would be consistent with regulations that allow deduction of time from a felony defendant's sentence for matters like good behavior. See, e.g., Ohio Adm. Code5120-2-05 (allowing deduction of up to thirty percent of the minimum sentence for felony defendants whose prison terms were imposed before July 1, 1996).
Again, the record is not completely clear. However, if this matter cannot be resolved with the APA, a declaratory judgment action is the appropriate remedy for deciding "the constitutionality or constitutional application of parole guidelines." Hattie v. Anderson (1994),68 Ohio St.3d 232, 235. See, also, State v. Young (Aug. 18, 2000), Greene App. No. 2000 CA 26, unreported (outlining proper remedy against APA for improper assignment of offense categories).
As a final matter, we note that the State has filed a motion to strike various documents which are attached to Wombold's reply brief. The State's motion is based on Wombold's failure to file a motion to supplement the record. In response, Wombold says that he did not need to supplement the record because the documents were already part of the trial court record. However, while the items in question may have been part of the record before the trial court in the first post-conviction proceeding, the trial court did not review them when it ruled on the second post-conviction petition. As a result, we cannot add these items and then decide the appeal based on the new matter. See, e.g., State v. Ishmail (1978), 54 Ohio St.2d 402. As an aside, we should note that we did look at the proposed materials, but found nothing relevant to our decision.
In light of the preceding discussion, the State's motion to strike the documents from the reply brief of the defendant is granted. Further, all of the defendant's assignments of error are overruled, and the judgment of the trial court is affirmed.
YOUNG, J., concurs.
GRADY, J., concurring and dissenting.