ATTORNEY FOR APPELLANT
Mary Lee Schiff
Evansville, Indiana

ATTORNEY FOR APPELLEE
Scott A. Danks
Evansville, Indiana

In the

# Indiana Supreme Court



No. 82S01-0904-CV-149

SUZANNE HEBERT HAMILTON,

*Appellant (Petitioner below),*

v.

RICHARD WAYNE HAMILTON,

*Appellee (Respondent below).*

Appeal from the Vanderburgh Superior Court, No. 82D04-0605-DR-516
The Honorable Jeffrey L. Biesterveld, Special Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 82A01-0804-CV-151

**October 7, 2009**

**Boehm, Justice.**

This case involves a Florida child support order registered for enforcement in Indiana pursuant to the Uniform Interstate Family Support Act. The Indiana trial court issued a contempt order requiring the father to pay less than the full amount of the Florida support obligation to avoid incarceration. We hold that the trial court's order did not impermissibly modify the foreign judgment. We also hold that the Federal Consumer Credit Protection Act, which limits the amount of wages that may be subject to garnishment, does not restrict the amount of support that may be awarded.

**Facts and Procedural History**

Richard and Suzanne Hamilton were granted a divorce in Florida in July 2005. The Florida divorce judgment awarded Suzanne physical custody of the couple's two children and required Richard to pay support in the amount of $1,473 per month. The judgment also required Richard to pay a $3,619 arrearage in support from the time the couple separated in March 2005.

Richard did not fulfill his child support responsibilities, and by January 2006 he owed a total of $11,879. Suzanne sought enforcement of Richard's support obligation by filing a motion for contempt in the Florida court. Richard did not appear at the hearing on Suzanne's motion, and on January 13, 2006, the Florida court held Richard in contempt. The Florida court found Richard had the ability to pay Suzanne but had willfully failed to do so, and sentenced him to 170 days in jail unless he tendered $7,500 within twenty days. The court also set up a payment schedule for Richard to satisfy the balance of the arrearages and the ongoing support obligation.

Suzanne and the children remained Florida residents, but at some point Richard moved to Evansville in Vanderburgh County, Indiana where he lived with his parents. Suzanne sought enforcement of the Florida orders by registering the Florida support judgment and contempt order in Vanderburgh Superior Court. The Indiana court ruled that the child support judgment was a properly registered foreign order entitled to full faith and credit. The court also extended full faith and credit to the findings and conclusions in the Florida contempt order, "except as to its judgment that the Husband is ordered incarcerated in the [county] jail for a time of 170 days." The court concluded that remedies for contempt are discretionary and do not bind responding tribunals. Although the Indiana court found Richard in contempt, it stayed the jail sentence if Richard tendered $3,750 and made monthly payments of $1,250. In a separate order entered November 10, 2006, the court established Richard's arrearages at $20,466.50.

Richard struggled to meet his monthly obligations, and Suzanne soon sought relief through a writ of bodily attachment. On March 29, 2007, the Indiana trial court ordered Richard to serve 170 days in the county jail, but stayed the sentence contingent upon Richard's paying Suzanne $1,000, obtaining full-time employment, and executing a wage assignment in an amount specified by the Indiana Child Support Guidelines or $150 per week, whichever was greater.

In May 2007, Suzanne again sought to hold Richard in contempt for failure to meet the conditions of the court's orders. Richard testified that he had met the three conditions imposed by the March 29 order, and the court found no contempt. In November 2007, Suzanne again asked the court to find Richard in contempt and asked for larger monthly payments and more aggressive enforcement of the Florida support order. At the hearing on this motion, Richard testified that he was working between thirty and fifty hours per week and earning $7 per hour. Financial exhibits reflected that he was paying an average of $150 per week in support. On March 4, 2008, the trial court ruled that Richard was not in contempt of the Indiana orders. The trial court explained:

> The Court finds that under the Federal Consumer Credit Protection Act (15 U.S.C. 1673(b)) the federal limit for income withholding applies to the aggregate disposable weekly earnings (ADWE). ADWE is the net income left after making mandatory deductions such as: state, federal, local taxes, Social Security taxes, statutory pension contributions, and Medicare taxes. The Federal CCPA limit is 50% of the ADWE for child support and alimony, which is increased by: 1) 10% if the employee does not support a second family; and/or, 2) 5% if the arrears [are] greater than 12 weeks. At the present time, Respondent/Father is voluntarily paying in excess of the maximum 60% by prior order of this Court.

Suzanne appealed this order, arguing that (1) the order constituted an impermissible modification of the Florida support judgment, (2) the trial court erred in finding that the Federal Consumer Credit Protection Act (FCCPA) capped the husband's child support obligations, and (3) the court abused its discretion in failing to hold Richard in contempt. The Court of Appeals affirmed. Hamilton v. Hamilton, 895 N.E.2d 397, 399 (Ind. Ct. App. 2008). The Court of Appeals held that the trial court's judgment was a permissible enforcement order, because the trial court gave full faith and credit to the $1,473 Florida support judgment and required Richard to contribute toward that obligation to avoid incarceration. Id. at 403. The Court of Appeals further held that the trial court did not abuse its discretion in declining to hold Richard in contempt, as Richard fulfilled the conditions set forth in the trial court's March 29 order. Id. at 405. With regard to the findings quoted above, the Court of Appeals agreed with Suzanne that the FCCPA is a wage garnishment limitation but does not limit the amount of child support that may be ordered. The Court of Appeals viewed the trial court's references to the FCCPA as observations that did not form the basis of its conclusions. Id. at 405–06. We granted transfer.

3

## I. Modification vs. Enforcement of the Florida Order

The first issue is whether the trial court's March 4 judgment constituted a modification of the original Florida support order that would violate either the Full Faith and Credit Clause or the Supremacy Clause of the Constitution of the United States. This is an issue of law which we review de novo. Gary Cmty. Sch. Corp. v. Powell, 906 N.E.2d 823, 828 (Ind. 2009).

Article IV, Section 1 of the United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." In 1994, Congress exercised its Article IV authority to "prescribe . . . the Effect" of state court support orders by enacting the Full Faith and Credit for Child Support Orders Act (FFCCSOA). 28 U.S.C. § 1738B (2006). FFCCSOA provides that a state which first issues a support order retains continuing, exclusive jurisdiction over the judgment subject to exceptions not relevant here. Id. § 1738B(d). Under the Supremacy Clause of the United States Constitution, the provisions of FFCCSOA are binding on the states and supersede any inconsistent provisions of state law. Brickner v. Brickner, 723 N.E.2d 468, 472 (Ind. Ct. App. 2000).

State legislatures also addressed this issue in the same general timeframe as the enactment of FFCCSOA. The National Conference of Commissioners on Uniform State Laws first adopted the Uniform Interstate Family Support Act (UIFSA) in 1992. Amended versions were promulgated in 1996 and 2001, and UIFSA has now been adopted in one version or another by all fifty states. Unif. Interstate Family Support Act ("UIFSA") Prefatory Note (amended 2001), 9IB U.L.A. 159, 161–62 (2005). Indiana has enacted the 1996 version. Ind. Code §§ 31-18-1-1 to -9-4 (2004).

The rather odd circumstance that the two statutes occupy the same legal space is apparently an accident of history. As one scholar explains:

> The rationale for promulgating both a uniform law . . . and a federal statute, FFCCSOA, that accomplish essentially the same objective is somewhat elusive. Many states began enacting UIFSA after the National Conference of Commissioners on Uniform State Laws approved UIFSA in 1992. Some child support advocates, however, worried that piecemeal, state-by-state adoption of

4

UIFSA would delay receipt of the intended benefits by interstate obligees. In addition, . . . UIFSA supporters believed that the "uniform law" would become anything but uniform.

Congress ultimately adopted two solutions to the threat of non-uniform state law. First, FFCCSOA required states to accord full faith and credit to another state's child support order under most circumstances. Second, Congress recently required every state to pass UIFSA without alteration.

Patricia Wick Hatamyar, Critical Applications and Proposals for Improvement of the Uniform Interstate Family Support Act and the Full Faith and Credit for Child Support Orders Act, 71 St. John's L. Rev. 1, 6–7 (1997) (footnotes omitted).

It has been observed that FFCCSOA and UIFSA are "virtually identical." Trissler v. Trissler, 987 So.2d 209, 210 (Fla. Dist. Ct. App. 2008). The two are not precisely the same, however, and "where UIFSA is silent, the FFCCSOA may help fill any gaps." Spencer v. Spencer, 882 N.E.2d 886, 889 (N.Y. 2008). The two statutes are to be viewed as complementary and duplicative, not contradictory. Witowski v. Roosevelt, 199 P.3d 1072, 1077 n.2 (Wyo. 2009); see also LeTellier v. LeTellier, 40 S.W.3d 490, 496–98 (Tenn. 2001) (examining the history of UIFSA and FFCCSOA and concluding that Congress did not intend FFCCSOA to preempt UIFSA). As we recently held, the FFCCSOA does not preempt the UIFSA. Basileh v. Alghusain, ___ N.E.2d ___, ___ (Ind. 2009).

The stated objective of both UIFSA and FFCCSOA is to create a national regime in which only a single support order is effective at any given time. UIFSA Prefatory Note (amended 1996), 9IB U.L.A. at 287; Full Faith and Credit for Child Support Orders Act, Pub. L. 103-383, § 2(b), 108 Stat. 4063, 4064 (1994) (codified as amended at 28 U.S.C. § 1738B (2006)). UIFSA's cornerstone provision is: "As long as one of the individual parties or the child continues to reside in the issuing State [in this case Florida], and as long as the parties do not agree to the contrary, the issuing tribunal has continuing, exclusive jurisdiction over its [child-support] order—which in practical terms means that it may modify its order." UIFSA § 205 cmt. (amended 1996), 9IB U.L.A. at 340; accord I.C. § 31-18-2-5(a). As a corollary, a responding state, in this case Indiana, "shall recognize and enforce, but may not modify, a registered order if the issuing tribunal had jurisdiction." UIFSA § 603(c) (amended 1996), 9IB U.L.A. at 425; accord I.C. § 31-18-6-3(c). UIFSA does not expressly define "modify," but FFCCSOA defines the term as "a change in a child support order that affects the amount, scope, or duration of the

5

order and modifies, replaces, supersedes, or otherwise is made subsequent to the child support order." 28 U.S.C. § 1738B(b). Suzanne contends that the Vanderburgh Superior Court orders impermissibly modified the Florida support order. Richard responds that the orders were proper enforcement mechanisms that UIFSA and FFCCSOA leave to the discretion of the Indiana courts. For the reasons explained below, we agree with Richard.

The Full Faith and Credit Clause "generally requires every State to give to a judgment at least the res judicata effect which the judgment would be accorded in the state which rendered it." Durfee v. Duke, 375 U.S. 106, 109 (1963); see also Riley v. New York Trust Co., 315 U.S. 343, 349 (1942) ("By the Constitutional provision for full faith and credit, the local doctrines of res judicata, speaking generally, become a part of national jurisprudence. . . ."); 18B Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 4467, at 14 (2d ed. 2002) (describing the Full Faith and Credit Clause, as implemented by federal statute, as the "vehicle for exporting local res judicata policy to other tribunals"). This "does not mean that States must adopt the practices of other States regarding the time, manner, and mechanisms for enforcing judgments. Enforcement measures do not travel with the sister state judgment as preclusive effects do; such measures remain subject to the evenhanded control of forum law." Baker v. General Motors Corp., 522 U.S. 222, 235 (1998); see also Restatement (Second) of Conflict of Laws § 99 (1971) ("The local law of the forum determines the methods by which a judgment of another state is enforced."); 18B Wright et al., supra, at 28 ("Each state . . . need enforce judgments only according to its own enforcement procedures.").

Notwithstanding the prohibition against modification of support judgments by responding tribunals, the commentary to UIFSA makes clear that "the power to enforce the order of the issuing State is not 'exclusive' with that State. Rather, on request one or more responding States may also exercise authority to enforce the order of the issuing State." UIFSA § 206 cmt. (amended 2001), 9IB U.L.A. at 196; accord I.C. § 31-18-2-6(a). Several provisions of UIFSA reflect respect for the enforcement procedures of the responding state.[1] And UIFSA includes a lengthy list of actions a responding state court "may" take to enforce an order.[2]

---

[1] "A registered order issued in another state is enforceable in the same manner and is subject to the same procedures as an order issued by a tribunal of [the responding] State." UIFSA § 603(b) (amended 1996), 9IB U.L.A. at 425; accord I.C. § 31-18-6-3(b). "The law of the issuing state governs the nature, extent, amount, and duration of current payments and other obligations of support and the payment of arrearages

In this case, the Florida court issued the $1,473 per month support judgment. Suzanne and her children remained Florida residents, and the parties never agreed to grant modification jurisdiction to another tribunal. Florida therefore retained continuing, exclusive jurisdiction over the original order. Indiana became a "responding" state when Suzanne registered the support order and requested that it be enforced by the Vanderburgh court. Indiana acquired authority to enforce the judgment but not to modify it. The Indiana trial court then issued a series of orders acknowledging Richard's obligation and arrearages but ultimately permitting Richard to avoid incarceration if he paid $150 per week through a wage assignment. The issue, as the Court of Appeals aptly framed it, is whether the trial court's orders constituted valid enforcement or impermissible modification of the original Florida support judgment.

---

under the order." UIFSA § 604(a) (amended 1996), 9IB U.L.A. at 427; accord I.C. § 31-18-6-4(a). But the responding tribunal "shall apply the procedural and substantive law, including the rules on choice of law, generally applicable to similar proceedings originating in [the responding] State and may exercise all powers and provide all remedies available in those proceedings." UIFSA § 303(1) (amended 1996), 9IB U.L.A. at 361; accord I.C. § 31-18-3-3.

[2] UIFSA, as adopted in Indiana, provides that

> A responding Indiana tribunal, to the extent otherwise authorized by law, may do one (1) or more of the following:
>
>> (1) Issue or enforce a support order, modify a child support order, or enter a judgment to establish paternity.
>>
>> (2) Order an obligor to comply with a support order, specifying the amount and the manner of compliance.
>>
>> (3) Order income withholding.
>>
>> (4) Determine the amount of any arrearages and specify a method of payment.
>>
>> (5) Enforce orders by civil or criminal contempt, or both.
>>
>> (6) Set aside property for satisfaction of the support order.
>>
>> (7) Place liens and order execution on the obligor's property.
>>
>> (8) Order an obligor to keep a tribunal informed of the obligor's current [residential and employment details.]
>>
>> (9) Issue a bench warrant or body attachment for an obligor who has failed after proper notice to appear at a hearing ordered by the tribunal, and enter the bench warrant in any local and state computer systems for criminal warrants.
>>
>> (10) Order the obligor to seek appropriate employment by specified methods.
>>
>> (11) Award reasonable attorney's fees and other fees and costs.
>>
>> (12) As appropriate, grant any other available remedy under federal or state law.

I.C. § 31-18-3-5(b); accord UIFSA § 305 (amended 1996), 9IB U.L.A. at 365-66.

7

We agree with the Court of Appeals that the trial court's contempt orders were valid enforcement mechanisms. The trial court gave full faith and credit to the Florida support order and did not alter "the amount, scope, or duration" of Richard's $1,473-per-month obligation. 28 U.S.C. § 1738B(b). The arrearages continue to accrue in accordance with the Florida order. To be sure, the trial court issued a contempt order requiring Richard to pay only $150 per month to avoid incarceration. But as a responding tribunal, the Vanderburgh Superior court had discretion to "specify[] the amount and the manner of compliance" with the original support order, and to fashion a remedy that would most effectively compel payment. I.C. § 31-18-3-5(b)(2); UIFSA § 305 (amended 1996), 9IB U.L.A. at 365-66. The UIFSA enforcement options are permissive, not compulsory, and contemplate that not all enforcement mechanisms will demand 100 cents on every dollar owed.

Just as the trial court's order is consistent with UIFSA, it also meets the requirements of the Federal Constitution. We are obligated to give the Florida order the same effect it would receive in a Florida court. But we are directed to no principle of Florida law that mandates imprisonment for contempt for violation of a support order, or precludes orders that attempt to maximize compliance in light of realistic prospects of payment. To the contrary, Florida, like any sensible jurisdiction, recognizes that some flexibility in enforcement is in the interest of the affected child. See, e.g., King v. King, 530 So. 2d 431, 433 (Fla. Dist. Ct. App. 1988) (noting that the trial court has discretion "to enforce compliance with a provision for child support by any equitable remedy that the court may determine to be appropriate or necessary").

Suzanne cites Reis v. Zimmer, 700 N.Y.S.2d 609 (N.Y. App. Div. 1999), amended by 710 N.Y.S.2d 259 (N.Y. App. Div. 2000), and Walker v. Amos, 746 N.E.2d 642 (Ohio Ct. App. 2000). Reis involved a Massachusetts support agreement which required the father to pay $395 per month. 700 N.Y.S.2d at 611-12. The mother moved to New York and later sought to relocate with the children to Oregon. Id. A New York trial court granted the mother's request to take the children and set forth a visitation arrangement for the father. Id. at 612-13. In addition, the trial court directed the father to deposit his support payments into a special account to be used by the father to pay for transportation costs, a toll-free telephone number, and other expenses of his communication and visitation with the children. Id. The court did not change the aggregate amount of the father's monthly obligation. Id. The New York Appellate Division

8

held that the trial court's diversion of support payments from the children into the special account constituted an impermissible modification of the prior support order. Id. at 613.

In Walker, an Indiana support order required father to pay $35 per week. 746 N.E.2d at 644. The mother sought enforcement in Ohio pursuant to the Uniform Reciprocal Enforcement of Support Act, the predecessor to UIFSA. Id. An Ohio court ordered the father to meet the weekly obligation and pay off his arrearage. Id. The father failed to comply, and a series of contempt motions and proceedings ensued. Id. at 645. At some point the father became eligible to receive supplemental security income ("SSI"), and moved "to dismiss the contempt proceedings based on the fact that he was a recipient of SSI." Id. The trial court granted the motion, set aside its contempt order, and suspended the father's support obligation from the time he first became entitled to SSI benefits. Id. The Ohio Court of Appeals held that this was "a modification of the severest form," leaving the child with no support. Id. at 649.

Neither Reis nor Walker has any application to this case. In Reis, the trial court reallocated support money that would have gone directly to the children, and diverted it to the father's expenses in visiting and communicating. And in Walker, the trial court suspended the support obligation entirely, which both halted payments and reduced the amount of any accumulating arrearages. Here, by contrast, the trial court did not divert, suspend, or otherwise alter Richard's support responsibilities. Arrearages continue to accrue as provided in the Florida order. The trial court is entitled to fashion its order in a manner best designed to encourage compliance. Its refusal to find Richard in contempt if the conditions are met is a valid enforcement mechanism.

For the reasons stated, we hold that that the trial court's contempt orders did not modify the Florida support judgment in violation of UIFSA or FFCCSOA, and are consistent with the requirements of the Full Faith and Credit Clause.

## II. The Trial Court's Contempt Findings

The next issue is whether the trial court erred by not holding Richard in contempt. To be held in contempt, a party must have willfully disobeyed a court order. City of Gary v. Major, 822 N.E.2d 165, 170 (Ind. 2005). The determination of whether a party is in contempt is a

9

matter left to the discretion of the trial court.  Id. at 171.  We will reverse a trial court's contempt findings only if there is no evidence or inferences drawn therefrom to support them.  Id.

The trial court's order of March 29, 2007 required Richard, in order to avoid jail time, to pay Suzanne $1,000, secure full-time employment, and execute a wage assignment for the greater of the amount specified by the Indiana Child Support Guidelines or $150 per week.  On June 4, 2007, the trial court found that Richard had complied with all three conditions and was no longer in contempt.  Suzanne then renewed her motion and asked the special judge to review the court's standing orders.  The court issued an order on March 4, 2008 effectively denying Suzanne's motion and declining to hold Richard in contempt.  The contempt requirements at issue here stem from the March 29, 2007 order, and the judgment before us on appeal is the March 4, 2008 denial of Suzanne's renewed motion.

The March 4, 2008 order is devoted mostly the Federal Consumer Credit Protection Act (FCCPA).  The FCCPA provides in part:

> The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed—
>
>> (A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and
>>
>> (B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week;
>
> except that, with respect to the disposable earnings of any individual for any workweek, the 50 per centum specified in clause (A) shall be deemed to be 55 per centum and the 60 per centum specified in clause (B) shall be deemed to be 65 per centum, if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek.

15 U.S.C. § 1673(b)(2) (2006).  "No court of the United States or any State, and no State (or officer or agency thereof), may make, execute, or enforce any order or process in violation of this section."  Id. § 1673(c).  The purpose of the FCCPA is "to regulate garnishment in its usual sense as a levy on periodic payments of compensation needed to support the wage earner and his

10

family on a week-to-week, month-to-month basis." <u>Kokoszka v. Belford</u>, 417 U.S. 642, 651 (1974).

We agree with the Court of Appeals that the FCCPA limits the amount of a person's wages that may be assigned but does not limit the overall amount of support that a parent may owe. <u>See, e.g.</u>, <u>Frankel v. Frankel</u>, 886 A.2d 136, 155 (Md. Ct. Spec. App. 2005) ("The Act limits only the amount that a court can order from garnished wages. It does not limit the amount that a court can order for child support."); <u>Arthur v. Arthur</u>, 720 N.E.2d 176, 184–85 (Ohio Ct. App. 1998) ("The withholding limits imposed by . . . Section 1673(b), Title 15, U.S. Code do not impose limitations on a trial court's ability to order support in excess of those limits, but only restricts [sic] the trial court's ability to order wage withholdings beyond those limits."); <u>see also</u> <u>In re Marriage of Eklofe</u>, 586 N.W.2d 357, 359 (Iowa 1998) ("The federal restrictions do not apply to the garnishment of property other than earnings."). Even where a wage-withholding order garnishes the maximum allowable income from a parent's paycheck, the parent may still owe additional money based on the support order and may be held in contempt for not meeting the totality of the obligation. It would thus have been erroneous for the trial court to base its support-related contempt finding on the garnishment limitations imposed under the FCCPA.

The Court of Appeals viewed the trial court's discussion of the FCCPA as nothing more than observations that did not form the basis of its ruling. The Court of Appeals also found that the record in this case substantiated the trial court's ultimate decision not to hold Richard in contempt. We agree with the Court of Appeals that this record is sufficient to support the trial court's findings. The record is also sufficient to conclude that the order is a reasonable balance of the desirability of enforcement of support orders against the realities of Richard's economic circumstances. We are not certain whether those findings and conclusions were the basis of the trial court's ruling, or whether the trial court felt constrained by the FCCPA in reaching its decision. Most of the trial court's order that is the basis of this appeal deals with the FCCPA, as opposed to the evidence and conditions at issue in the case. To the extent the trial court's ruling was based on the FCCPA garnishment limitations, it was predicated on an erroneous view of the law. We therefore remand to the trial court to render a contempt determination without reference or deference to the FCCPA.

### III. Richard's Cross-Appeal

Richard argues that this appeal is frivolous and vindictive. He requests an award of appellate attorneys fees in the amount of $5,000. The Court of Appeals found that the appeal was not frivolous and denied Richard's request. <u>Hamilton</u>, 895 N.E.2d at 406. We agree and summarily affirm that portion of the Court of Appeals' opinion. Ind. Appellate Rule 58(A)(2).

### Conclusion

This cause is remanded for further proceedings not inconsistent with this opinion.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.