

FILED
Mar 03 2025, 9:19 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Joseph C. Dickerson, Jr.,

*Appellant-Respondent*

v.

Genya Toney,

*Appellee-Petitioner*

and

State of Indiana,

*Appellee-Intervenor*

---

March 3, 2025

Court of Appeals Case No.
24A-RS-1492

Appeal from the Marion Circuit Court

The Honorable Susan Boatwright, Magistrate

Trial Court Cause No.
49C01-1402-RS-3849

**Kenworthy, Judge.**

## Case Summary

[1] Joseph C. Dickerson, Jr. ("Father") and Genya O. Toney ("Mother") are the parents of A.D.T. ("Child"). In 2014, the trial court entered an order establishing Father's paternity and an order of child support under the Uniform Interstate Family Support Act ("UIFSA").[1] Due mostly to subsequent support enforcement agency actions, Father believed his child support obligation terminated soon thereafter. But when the State of Indiana (the "State") resumed enforcing his obligation in 2022, Father petitioned for relief. The trial court initially granted Father's request, but after the State moved to correct error, the trial court found Father's child support obligation did not terminate in 2014 as he thought, resulting in a substantial arrearage. In this *pro se* appeal, Father raises two issues for our review:

> 1. Did the trial court abuse its discretion by granting the State's motion to correct error?

---

[1] *See* Ind. Code art. 31-18.5 (2015). In 1996, the Indiana legislature enacted its first version of UIFSA, which it amended and recodified in 1997 under Indiana Code art. 31-18. *See Basileh v. Alghusain*, 912 N.E.2d 814, 819 (Ind. 2009) (discussing Indiana's enactment and amendments to UIFSA). The legislature repealed Indiana Code art. 31-18 and recodified UIFSA under Indiana Code art. 31-18.5, effective July 1, 2015. Throughout this opinion, we cite to the version of UIFSA in effect at the time of the relevant events.

2. Did the trial court abuse its discretion by denying Father's Trial Rule 60(B) motion for relief from the child support order?

[2] We affirm.

## Facts and Procedural History

[3] Mother gave birth to Child in 2004. In late 2013, Mother and Child were living in Pennsylvania. Mother went to the domestic relations section of the court of common pleas in Philadelphia in its capacity as a Title IV-D[2] agency (the "Philadelphia IV-D office") and initiated a request to establish paternity and an order of child support. Father was then residing in Marion County, Indiana, so the Philadelphia IV-D office sent a request under UIFSA to the Marion County Prosecutor's Office ("MCPO")—the county's Title IV-D agency[3]—to initiate proceedings in Indiana. MCPO petitioned on behalf of Mother and Child in the Marion Circuit Court for an order of paternity and child support.

[4] After establishing Father's paternity, on August 28, 2014, the trial court ordered Father to pay $139 per week in child support, plus $11 per week toward arrearage of $3,753, for a total weekly support order of $150 (the "Indiana

---

[2] "Title IV-D" refers to the Title IV, Part D of the Social Security Act, 42 U.S.C. § 651 *et seq. See also* 23 Pa. Stat. and Cons. Stat. Ann. § 4373 (1998) (enabling the Pennsylvania department of human services to directly or under cooperative agreements with certain entities, including the domestic relations sections of the courts of common pleas, administer the Title IV-D program in Pennsylvania).

[3] *See* I.C. § 31-25-4-13.1(b)(1) (2014) (enabling the child support bureau of the Indiana Department of Child Services to contract with certain parties, including the prosecuting attorney in each judicial circuit, to undertake activities required to be performed under Title IV-D).

support order"). The trial court ordered Father to make all payments "by income withholding through the Indiana State Central Collections Unit, to be forwarded to the Clerk of Court or central payment repository of the initiating jurisdiction." *Appellant's App. Vol. 2* at 122. In addition, the "non-custodial parent is advised no credit may result from making support payments other than through the Indiana State Central Collections Unit." *Id*.

Father began making child support payments. Soon thereafter, Parents discussed entering into a private agreement for child support, under which Father would pay Mother directly as he was able. In September, Mother took action in Pennsylvania to withdraw her request for support services.

On October 16, 2014, the Philadelphia IV-D office sent a "Child Support Enforcement Transmittal #2 – Subsequent Actions" (a "transmittal 2") to MCPO, advising MCPO to "terminate current support order as per request of [Mother.]" *Ex. Vol. 3* at 7. MCPO responded by letter, stating: "Please be advised that we received your transmittal 2 dated 10/16/14 requesting we terminate current support. Please provide the effective date and an updated arrears balance. Please provide requested information within 30 days or we will close our case." *Id.* at 16. In a document dated November 13, the Philadelphia IV-D office certified $0 arrearage. *Id.* at 8.

Father continued to make child support payments in accordance with the Indiana support order, and Pennsylvania began returning Father's payments to him. On December 29, the Philadelphia IV-D office sent MCPO a second

transmittal 2, stating: "YOU MAY CLOSE YOUR CASE, OUR CASE IS CLOSED DUE TO [MOTHER'S REQUEST] TO CLOSE[,] PLEASE SEE ATTACHED CERTIFICATION OF ARREARS." *Id.* at 9. The attachment certified $0 arrearage. MCPO closed its case and ceased enforcement activities.

[8] Father then began making payments directly to Mother. At first, Father paid Mother $300 a month, which she described as "not necessarily an amount we agreed on, but one that I accepted that[,] due to financial hardship, was the only thing that he would be able to afford." *Tr. Vol. 2* at 25. Father made payments during most years from 2014 to 2022, though of varying amounts and with irregular frequency. MCPO took no enforcement action, and neither party filed a child support enforcement or modification request for several years.

[9] Sometime in 2021, Mother opened a new child support enforcement action in Delaware County, Pennsylvania. In December 2021, the Delaware County IV-D office sent a transmittal 2 to MCPO stating, in relevant part:

> QUICK[4] shows that you established paternity [and] a support order in 2014. These orders were never received from your office.

---

4 "QUICK" in this context stands for "Query Interstate Cases for Kids." According to the U.S. Department of Health and Human Services, "QUICK is an electronic communication tool used by IV-D agencies to improve the quality and timeliness of intergovernmental case processing and customer service responses. QUICK is a browser-based application that allows an authorized user to view case data from another state in real time." U.S. Department of Health & Human Services, *About QUICK* (June 2, 2023), https://acf.hhs.gov/css/training-technical-assistance/about-quick [https://perma.cc/KJ2Y-BUYQ].

> I understand that your case is closed, but please provide copies of your orders (especially paternity) to our office as quickly as possible.

*Ex. Vol.* 3 at 14. MCPO reopened its case in 2022 and begin enforcing the Indiana support order. MCPO notified Father he was in arrears approximately $56,000, began garnishing his wages, and submitted the debt to the federal tax refund offset program and credit reporting agencies. Father received notices his license and passport may be suspended.

[10] On June 27, 2023, Father, by counsel, petitioned to modify support and recalculate arrearage. In October, Father, then *pro se*, moved for preliminary injunctive relief, alleging there was no support order in effect and therefore no arrearage. The State intervened.

[11] The trial court held a support arrearage hearing on February 7, 2024, at which Mother and Father appeared *pro se* and the State by MCPO. At the hearing, Father introduced various records from the Pennsylvania IV-D offices purportedly indicating Mother withdrew her request for child support. He testified he called MCPO and the Philadelphia IV-D office and confirmed the case was closed. He believed these actions terminated the Indiana support order in favor of his private agreement with Mother, particularly since Pennsylvania started to return his support payments to him. Mother testified she initiated action with the Philadelphia IV-D office in 2014, but she did not intend to "close the case" and "was not trying to terminate child support." *Tr. Vol. 2* at 32, 34.

[12] At the close of the hearing, the trial court found the parties entered into a private agreement for Father to pay child support directly to Mother, and Mother "by whatever means" caused Pennsylvania "to bring the child support order to zero with zero arrears." *Id.* at 38. Based on these facts and the Philadelphia IV-D office's transmittals to MCPO, the trial court found the Indiana support order terminated on October 16, 2014. Accordingly, the trial court found Father's income, wages, and tax refunds were "improperly withheld, as there was no current order for child support or arrearages to which any funds could have been, or should have been, withheld or applied." *Appellant's App. Vol. 2* at 27. The trial court granted Father's petition for modification and motion for injunctive relief. The trial court also found Child was emancipated under Pennsylvania law on her eighteenth birthday.

[13] The State moved to correct error, arguing the trial court misinterpreted the legal effect of the Philadelphia IV-D office's transmittals to MCPO and the Indiana support order could be enforced through Child's nineteenth birthday. The trial court set a hearing on the motion. Father interpreted the trial court's scheduling order as a grant of the State's motion to correct error, so he moved for relief from the Indiana support order under Trial Rules 60(B)(7) and (8). Father's motion both responded to the State's motion to correct error and invoked the court's equitable discretion to set aside the Indiana support order.

[14] The trial court held a hearing on May 23, at which Father appeared *pro se*, Mother appeared by counsel, and the State by MCPO. The State argued its

motion to correct error, and Father responded. The trial court then permitted Father to argue his Trial Rule 60(B) motion. The following exchange occurred:

> THE COURT: And how much of your arguments will be the same as they were related to the motion to correct error, or do you have additional information to provide to the Court on your relief?

> [FATHER]: Significantly, the argument would be the same, it is the same circumstances. Only thing that I would argue is that the circumstances justify a relief from judgment.

*Tr. Vol. 2* at 69. Father then cited Trial Rules 60(B)(7) and (8) and presented argument consistent with his motion for relief.

[15] On May 31, the trial court granted the State's motion to correct error, finding the Indiana support order was the only valid court order and enforceable against Father; Father's support obligation commenced on August 28, 2014 and ended when Child turned nineteen; Father's arrearage was not $0; and Father was entitled to credit for all payments made directly to Mother and to the Indiana State Central Collection Unit. The trial court deemed Father's motion for relief "a post-judgment memorandum" in support of Father's original petition for modification and recalculation of arrearages; but the court also entered a separate order denying Father's Trial Rule 60(B) motion. *Appellant's App. Vol. 2* at 17.

## The trial court did not abuse its discretion in granting the State's motion to correct error.

[16] Father first argues the trial court abused its discretion in granting the State's motion to correct error. We review a trial court's ruling on a motion to correct error for an abuse of discretion. *Berg v. Berg*, 170 N.E.3d 224, 227 (Ind. 2021). Accordingly, we will reverse only if the trial court's judgment is clearly against the logic and effect of the facts and circumstances before it or if the court erred on a matter of law. *Id.* But where a ruling turns on a question of law, our standard of review is *de novo*. *Id.*

### The trial court's findings are not clearly erroneous.

[17] Before we review the judgment, Father asks us to review two of the trial court's findings. When a trial court enters findings, the evidence must support the specific findings, which in turn must support the judgment. *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). We give due regard to the trial court's opportunity to judge witness credibility. *Id.*

[18] In its order granting the State's motion to correct error, the trial court found: "The parties did not attempt to contract away support for their child by their private agreement but, instead, had an alternative method for supporting the child from 2014 through 2021, which Mother admitted that Father partially fulfilled, but not at $139 per week, as ordered[.]" *Appellant's App. Vol. 2* at 15.

Father contends this finding "gives the impression that the parties simply agreed to change the form of payment and otherwise adhere to the order." *Appellant's Br.* at 23. Father disputes this implication, arguing the parties' agreement "was to terminate the support order and proceed on their own terms." *Id.* at 22. In this way, the trial court "fails to acknowledge Father's reliance on mother's promise to terminate the support order." *Id.* at 23.

[19] Father and Mother testified they had a private agreement under which Father would pay Mother directly for support as he was financially able, although they did not agree on a specific amount or timing. Mother testified she accepted Father's irregular and inconsistent payments believing it was all he could afford. The trial court's finding that they "did not attempt to contract away support" and "had an alternative method for supporting" Child accurately reflects the parties' testimony about their agreement. *Appellant's App. Vol. 2* at 15.

[20] As to Mother's intentions about the Indiana support order and her interactions with the Philadelphia IV-D office in 2014, the parties presented slightly different testimony. Father testified the parties "decided at that time that we would terminate the support order[.]" *Tr. Vol. 2* at 10. Mother testified she agreed to withdraw her request for support services through the Philadelphia IV-D office and took steps to do so, but she "was not trying to terminate child support." *Id.* at 34.[5] To the extent the trial court's finding implies Mother did not intend to

---

[5] Father attempted to introduce Exhibit E, a *pro se* appearance form Mother completed in 2014 and a *pro se* request to withdraw her "application and/or petition for support services at the Philadelphia County

terminate the Indiana support order, the trial court was entitled to credit Mother's testimony over Father's.[6]

[21] Father also disputes the trial court's finding that the "parties' agreement was not committed to writing or filed with the Court for its approval, and neither party testified that arrearages owed by Father from the original order were ever satisfied." *Appellant's App. Vol. 2* at 16. Father argues the form of the parties' agreement and the arrearage calculation were "not at issue during the hearing." *Appellant's Br.* at 23. But he does not now allege the parties' agreement was in writing, nor did he introduce a written agreement. And although he disputes the arrearage calculation in the Indiana support order, the trial court took judicial notice of the order, and neither party testified Father paid the arrearage it listed. The findings are not clearly erroneous.

---

Domestic Relations Section" dated September 22, 2014. *Ex. Vol. 3* at 18. The trial court did not formally admit Exhibit E, but a copy appears in the appellate record and Father read the applicable section during the hearing, although his statements were poorly transcribed. *See Tr. Vol. 2* at 52. In a motion filed with this Court, Father requests we order the transcript corrected to accurately reflect the contents of Exhibit E. However, corrections are unnecessary because we were able to verify the contents of Exhibit E and compare it to the transcript. Accordingly, in an order issued simultaneously with this decision, we deny Father's motion in this respect.

[6] As discussed later, the parties could not unilaterally terminate or modify the Indiana support order absent court intervention. As to whether the parties sought termination or modification—a point of contention at the hearing and on appeal—both Father and Mother testified they had a private agreement for child support under which the amount, frequency, and method of payment differed from the Indiana support order. Although Father argues the parties intended to terminate the Indiana support order when Mother approached the Philadelphia IV-D office, insomuch as Father did not intend to stop supporting Child, the parties describe a proposed modification to the Indiana support order

**The State did not raise new issues in its motion to correct error.**

[22] Father next argues the trial court abused its discretion in granting the State relief because the State impermissibly raised new issues for the first time in the motion to correct error, including "jurisdiction of the support order [and] legal efficacy of the parties' agreement[.]" *Id.* at 25. He also contends the State "offered new testimony about the MCPO's practice of suspending enforcement." *Id.* at 25–26.

[23] The purpose of a motion to correct error is to call the trial court's attention to errors committed at trial to give the court a chance to correct them. *Fratter v. Rice*, 954 N.E.2d 497, 506 (Ind. Ct. App. 2011), *trans. denied*. A Trial Rule 59 motion may address a breadth of potential errors, and the rule provides a broad range of remedies. *See Weida v. Kegarise*, 849 N.E.2d 1147, 1150 (Ind. 2006) (describing the evolution of Trial Rule 59).

[24] Not later than thirty days after a trial court's final judgment is noted in the Chronological Case Summary, the trial court or any party may move to correct error by filing a motion describing the error in specific rather than general terms, accompanied by a statement of facts and grounds on which the error is based. *See* T.R. 59(B)–(D). A party who opposes the motion may file a statement in opposition within fifteen days, which may advance reasons the judgment should remain unchanged or assert other grounds entitling him to relief. T.R. 59(E). If a trial court determines "prejudicial or harmful error has been committed," it "shall" take action to cure the error. T.R. 59(J). Among other relief, the rule authorizes a trial court to alter, amend, modify, or correct a

judgment, T.R. 59(J)(3), and amend or correct the findings or judgment under Trial Rule 52(B), T.R. 59(J)(4). When a trial court grants corrective relief, it must specify the general reasons for the correction. T.R. 59(J)(7); *Weida*, 849 N.E.2d at 1151.

[25] The State alleged the following errors in the trial court's first order: the trial court misinterpreted the effect of the Philadelphia IV-D office's transmittals; the parties' private agreement did not override the Indiana support order; the Indiana support order was the only enforceable order; no new court order was necessary for MCPO to enforce the Indiana support order; and the trial court erred by applying Pennsylvania law when determining Child's emancipation age. In sum, the State alleged the trial court misread the transmittal documents and incorrectly applied the law to the facts presented at the first hearing. Father had an opportunity to—and did—respond to the State's arguments. The State appropriately used the motion to present the alleged errors to the trial court and allow the court to correct them. *See Fratter*, 954 N.E.2d at 506.

[26] Still, Father contends a "motion to correct errors is not a vehicle to advance new issues or legal theories which should have been timely presented to the court." *Appellant's Br.* at 26 (citing *Evans v. Tuttle by Tuttle*, 645 N.E.2d 1119, 1121 (Ind. Ct. App. 1995), for the rule "[a] party may not raise an issue for the first time in a motion to correct errors or on appeal"). Father points to the transcript of the motion to correct error hearing, in which the trial court acknowledged the State had not made certain arguments about Title IV-D enforcement procedures during the first hearing. *See Tr. Vol. 2* at 56 (the trial

court stating the State's "explanation was not an argument that the Court heard when this matter came before it on . . . the original petition").

[27] In *Evans*, a trial court found the plaintiffs in a civil rights class action were entitled to reasonable attorney fees. 645 N.E.2d at 1120. After the plaintiffs filed their attorney fee requests and supporting affidavits, the trial court ordered the defendants to respond within thirty days. *Id*. After multiple extensions of time, the defendants did not respond, so the trial court awarded attorney fees to the plaintiffs. *Id*. at 1121. The defendants filed a motion to correct error, then appealed, arguing the trial court abused its discretion in the amounts of attorney fees awarded. *Id*. On appeal, this Court determined the defendants waived their argument because they could have responded to plaintiffs' motions for attorney fees but failed to do so. *See id*. (holding the defendants "cannot now challenge before this court the reasonableness of the awards when it presented no evidence or argument to the trial court").

[28] Unlike the defendants in *Evans*, the State in this case did not use the motion to correct error to mask its failure to timely respond and present evidence on a contested issue. The parties litigated the enforceability of the Indiana support order at the first hearing. The State's motion then pointed out errors in the trial court's initial order, including that the documents Father introduced were transmittals between support agencies, not court orders. The State's motion to correct error did not raise new issues and therefore the trial court did not abuse its discretion in granting the State's motion.

**The trial court's order granting the State's motion to correct error was not contrary to law.**

[29] Father also challenges the trial court's determination the Indiana support order did not terminate in 2014. This case began when Mother completed a uniform support petition and affidavit in support of establishing paternity in Pennsylvania. The Philadelphia IV-D office then transmitted the petition and supporting documentation to Indiana and requested Indiana establish an order of paternity and current support. Under UIFSA, when a responding Indiana court receives a petition from an initiating tribunal or a support enforcement agency, the Indiana court shall file the petition and may "[i]ssue or enforce a support order, modify a child support order, or enter a judgment to establish paternity." I.C. § 31-18-3-5 (1997). Under this authority, MCPO petitioned the Marion Circuit Court for an order establishing paternity and support for Child. And the trial court did so, resulting in the Indiana support order.

[30] UIFSA was enacted to "create a national regime in which only a single support order is effective at any given time." *Hamilton v. Hamilton*, 914 N.E.2d 747, 751 (Ind. 2009). The Act facilitates a state's constitutional obligation to give full faith and credit to child support orders issued by another state's tribunals. *See id*. UIFSA's "cornerstone provision" is that the tribunal issuing a child support order has continuing, exclusive jurisdiction over that order (1) as long as one of the parties or the child resides in the issuing state, or (2) until each individual party files written consent with the issuing tribunal for another state's tribunal to modify the order and assume continuing, exclusive jurisdiction. *Id*. at 751–

52; *see also* I.C. § 31-18-2-5(a) (1997) (Indiana's enactment of this provision). As a corollary, a responding state "shall recognize and enforce but may not modify a registered order if the issuing tribunal had jurisdiction." *Hamilton*, 914 N.E.2d. at 752; *see also* I.C. § 31-18-6-3(c) (1997). If one or more child support orders have been issued by different states, UIFSA provides rules to determine which order to recognize; in particular, if only one tribunal has issued a child support order, that tribunal's order "is controlling and must be recognized." I.C. § 31-18-2-7(a)(1) (1997). "The law of the issuing state governs the: (1) nature, extent, amount, and duration of current payments and other obligations of support; and (2) payment of arrearages under the order." I.C. § 31-18-6-4(a) (1997).

[31]   Under UIFSA, a tribunal means a "court, an administrative agency, or a quasi-judicial entity authorized to establish, enforce, or modify support orders or to determine paternity." I.C. § 31-18-1-25 (1997); I.C. § 31-18.5-1-2 (2015). In Indiana, the tribunal is a court, but not an administrative agency or quasi-judicial entity. I.C. § 31-18-1-25 (1997). In Pennsylvania, the courts of common pleas are the tribunals. 23 Pa.C.S.A. § 7101 (1997); 23 Pa.C.S.A. § 7101.1 (2015). Tribunals are distinct from support enforcement agencies, which have certain authority granted by statute, but do not enter support orders. *See* I.C. § 31-18-1-23 (1997) (defining a "support enforcement agency" as a "public official or an agency authorized to *seek* to: (1) enforce a support order or laws regarding the duty of support; (2) establish or modify child support; (3) establish

paternity; or (4) locate an obligor or the obligor's assets") (emphasis added); 23 Pa.C.S.A. § 7101 (1997) (substantially the same).

[32]     After the trial court issued the Indiana support order, Pennsylvania was required to give full faith and credit to the order. Father presented evidence the Philadelphia IV-D office asked MCPO to "terminate current support order as per request of [Mother.]" *Appellant's App. Vol. 2* at 71. Later, the Philadelphia IV-D office instructed MCPO to close its case because the Philadelphia case was closed. Twice the Philadelphia IV-D office certified the arrearages in their case as $0. Father also presented evidence suggesting the Philadelphia IV-D office never received the Indiana support order in 2014.[7] Father testified he called MCPO and the Philadelphia IV-D office and confirmed the case was closed. Father contends these actions induced him to believe the Indiana support order terminated in 2014.

[33]     The trial court, too, initially interpreted this evidence as court orders. But the State argued in the motion to correct error the documents were merely

---

[7] In 2021, the Delaware County, Pennsylvania IV-D office requested the Indiana support order from MCPO because Delaware County never received it, even though QUICK showed the order existed. The trial court admitted this communication as Exhibit C. Father also introduced an administrative record in which the Philadelphia IV-D office stated it had requested that Indiana establish an order of paternity and support but it "did not receive the order[.]" *Tr. Vol. 2* at 68; *see also Appellant's App. Vol. 2* at 222. The communication also indicates Mother "contacted [the] Philadelphia Court, stating that she wishes to withdraw her petition." *Tr. Vol. 2* at 68. The trial court admitted the document as Exhibit F and partially read it aloud during the hearing, but this exhibit does not appear in the exhibit volume. Instead, the second page of Exhibit E is mislabeled as Exhibit F. In a motion with this Court, Father asks us to order the trial court to correct the record. But because the trial court read the relevant contents of Exhibit F into the record during the hearing, and Father included the missing exhibit in his appendix, the inaccuracy in the exhibit volume does not hamper our ability to resolve this case. Therefore, in an order issued concurrently with our decision, we deny Father's motion.

transmittals between IV-D offices without legal effect on the Indiana support order. We agree. None of the communications between MCPO and the Pennsylvania IV-D offices are child support orders issued by a Pennsylvania tribunal. There is no evidence a Pennsylvania tribunal assumed continuing, exclusive jurisdiction to modify or terminate the Indiana support order. Accordingly, the Indiana support order was the only support order in effect, and under UIFSA, Pennsylvania was required to give full faith and credit to it.

[34] As to the parties' attempts to terminate or modify the Indiana support order, the right to support lies exclusively with the child and neither parent may contract away support benefits. *Straub v. B.M.T. by Todd*, 645 N.E.2d 597, 599 (Ind. 1994). Once a child support award is entered, the duty to support a child generally ends when a child becomes nineteen years of age. I.C. § 31-16-6-6(a) (2019).[8] A court may modify the award only in two circumstances:

> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

> (2) upon a showing that:

>> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

---

[8] There are some exceptions, such as if the child is emancipated earlier, but none are relevant here. *See* I.C. § 31-16-6-6(a)(1)–(4).

> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

I.C. § 31-16-8-1(b) (2019).

[35] It has long been the policy of this State that "after support obligations have accrued, a court may not retroactively reduce or eliminate such obligations." *Whited v. Whited*, 859 N.E.2d 657, 661 (Ind. 2007). A parent subject to a support order must make payments in accordance with that order until the court modifies or sets it aside. *Id.* Put differently, "this rule requires judicial action to reduce a support order." *Id.* "As a result, informal agreements between parents are generally not effective until a motion for modification is filed." *Id.* Indiana's legislative and judicial policies against informal modification "may work an occasional inequity," but the bright-line rule requiring judicial action serves the crucial functions of reducing disputes over amounts, methods, and effective dates of payments and redirecting expensive ligation costs to actual support of children. *Nill v. Martin*, 686 N.E.2d 116, 118 (Ind. 1997).

[36] Absent a court order, the Pennsylvania support enforcement agency's actions could not unilaterally modify—much less terminate—the Indiana support order. Nor could Father and Mother agree to terminate or modify the Indiana support order without judicial intervention. Accordingly, the trial court did not

abuse its discretion in finding Father's support obligation did not terminate in 2014 and in granting the State's motion to correct error.[9]

## The trial court did not abuse its discretion in denying Father's Trial Rule 60(B) motion.

[37] Father next argues the trial court erred in denying his Trial Rule 60(B) motion for relief from the Indiana support order. The decision of whether to grant or deny a Trial Rule 60(B) motion is in the trial court's equitable discretion and is reviewable only for abuse of discretion. *In re Adoption of C.B.M.*, 992 N.E.2d 687, 691 (Ind. 2013).

[38] To begin with, Father argues "[i]t is not apparent that the trial court *actually* held an evidentiary hearing with the intent of determining if [he] should be granted the relief sought." *Appellant's Br.* at 13. He notes the trial court deemed his motion a post-judgment memorandum in support of his previous petition for modification and motion for injunction and did not enter findings in the order denying the Trial Rule 60(B) motion. Yet Father agreed at the second hearing that the issues he raised in his Trial Rule 60(B) motion significantly overlapped with those raised in the State's motion to correct error. The essential question of both motions was whether the State had legal justification to enforce the

---

[9] The State argued to the trial court "anything that [Mother] received as far as child support was concerned directly from [Father] should be credited to him." *Tr. Vol. 2* at 50. In its order granting the motion to correct error, the trial court found Father was entitled to credit for all payments made directly to Mother and the Indiana State Central Collection Unit and set a hearing to determine the arrearage. The State does not challenge this ruling on appeal. Accordingly, we affirm the trial court's decision in this respect.

Indiana support order. The relief Father sought in his Trial Rule 60(B) motion was based on the trial court's equitable power, but the underlying legal issue is the same. Father also complains he did not have an adequate opportunity to present his arguments at the second hearing. But the trial court allowed Father to make his arguments, permitted the State to respond, and invited Father's rebuttal. The record does not support Father's appellate argument that the trial court disregarded his motion or denied him opportunity to argue his motion.

[39] Turning to the trial court's order, Father argues the trial court should have granted him relief under Trial Rule 60(B)(7) or (B)(8). Subsection (B)(7), in relevant part, provides that a trial court may relieve a party from a judgment when it "is no longer equitable that the judgment should have prospective application." T.R. 60(B)(7). To establish entitlement to relief under this subsection, the movant must show (1) there has been a change in circumstances since the entry of the original judgment, and (2) the change of circumstances was not reasonably foreseeable at the time of entry of the original judgment. *City of Indianapolis v. Tichy*, 122 N.E.3d 841, 845 (Ind. Ct. App. 2019). Among other requirements, our precedent requires the party moving for Trial Rule 60(B)(8) relief to "demonstrate some extraordinary or exceptional circumstances justifying equitable relief." *State v. Collier*, 61 N.E.3d 265, 268 (Ind. 2016). In this way, both Trial Rules 60(B)(7) and (8) are particularly concerned "with exceptional circumstances." *Tichy*, 122 N.E.3d at 845 (quotation omitted).

[40] When identifying exceptional circumstances, Father argues Mother withdrew her request for support with the Philadelphia IV-D office and, as a result, Pennsylvania remitted Father's payments to him. He contends these actions rendered the Indiana support order constructively ineffective. But the fact that the support enforcement agencies were no longer enforcing the Indiana support order or facilitating Father's child support payments did not alter Father's obligation to support Child. After Father and Mother came to an agreement concerning support, Father could have moved for modification of the Indiana support order. As our Supreme Court has observed, "submitting for court approval an agreed order modifying [child support] is among the simplest of legal tasks" and "certainly within the capabilities of diligent laymen." *Nill*, 686 N.E.2d at 118. And to the extent Father now disputes the trial court's calculation of support and arrearage in the Indiana support order, a Trial Rule 60(B) motion is not a substitute for a belated appeal and cannot revive an expired attempt to appeal. *Tichy*, 122 N.E.3d at 845.

[41] Moreover, we are unpersuaded by Father's claims he will suffer "significant loss" if the Indiana support order is not set aside, but letting it stand would "unjustly enrich Mother[.]" *Appellant's Br.* at 17, 20. As discussed above, an order of child support lies exclusively with the child. *Straub*, 645 N.E.2d at 599. And even though Child is now emancipated, we do not apply the equitable doctrine of laches in child support proceedings because we will not penalize a child for the parent's delay in pursuing child support. *Trent v. Trent*, 829 N.E.2d 81, 87 (Ind. Ct. App. 2005) (defining laches as "neglect for an unreasonable

length of time, under circumstances permitting diligence, to do what in law should have been done" and observing "the doctrine of laches simply does not apply to child support cases") (quotations omitted).

[42] In sum, Father has not demonstrated extraordinary circumstances justifying equitable relief from the Indiana support order. Accordingly, the trial court did not abuse its discretion in denying Father's Trial Rule 60(B) motion.

## Conclusion

[43] The trial court did not abuse its discretion in granting the State's motion to correct error or denying Father's Trial Rule 60(B) motion for relief from the Indiana support order.

[44] Affirmed.

Mathias, J., and Brown, J., concur.

APPELLANT PRO SE
Joseph C. Dickerson, Jr.
Indianapolis, Indiana

ATTORNEYS FOR INTERVENOR
Theodore E. Rokita
Indiana Attorney General

Marjorie Lawyer-Smith
Indianapolis, Indiana